Sandy **JOHME**, Respondent,

v.

**ST. JOHN'S MERCY HEALTHCARE, Appellant.**

**No. SC 92113.**

Supreme Court of Missouri, En Banc.

May 29, 2012.

Amanda Lee Miranda, Maurice D. Early, Early & Miranda PC, St. Louis, for St. John's Mercy Healthcare.

Ellen E. Morgan, Law Offices of Ellen E. Morgan, St. Louis, for Sandy Johme.

Randy Charles Alberhasky, The Alberhasky Law Firm PC, Springfield, for The Missouri Association of Trial Attorneys, which filed a brief as a friend of the Court.

MARY R. RUSSELL, Judge.

This case addresses whether the Labor and Industrial Relations Commission properly applied section 287.020.3(2) [1] in awarding workers' compensation benefits to an employee who was injured in an office kitchen after making coffee. The employee turned and twisted her ankle, causing her foot to fall off her shoe.

This Court finds that the employee was not entitled to workers' compensation benefits because she failed to show that her injury arose out of and in the course of her employment as specified by section 287.020.3(2). The Commission's decision is reversed for the reasons articulated below.

### Background

Sandy Johme was employed by St. John's Mercy Healthcare as a billing representative. Her work involved typing charges at a computer in an office. Her

---

1. Unless otherwise indicated, references to section 287.020.3(2) are to RSMo Supp.2011, the most recent version of the statute. This statutory language has not been changed since the statute was amended in 2005.

desk was about 30 steps from an office kitchen where St. John's provided a coffee station for use by all employees. It was customary in the office that the employee who took the last cup of coffee would make another pot of coffee. Johme was injured in a fall that occurred in the kitchen after she made a pot of coffee to replace a pot of coffee from which she had taken the last cup.[2] Consistent with her office's policies, Johme remained "clocked-in" to her job during her coffee break and while making the coffee. There is no issue that she was "clocked-in" as an employee at the time of her fall.

At the time of Johme's fall, she was wearing sandals with a thick heel and a flat bottom, with a one-inch thick sole. Johme was alone in the kitchen during the fall. There were no irregularities or hazards on the kitchen's floor. The floor was not wet, and there was not any trash on the floor.

After her fall, Johme used a counter to pull herself up. Another employee came into the kitchen and asked Johme if she was all right. Johme said she was not okay, and she asked the other employee to get her manager. An injury report was completed by Johme and her manager. Johme's portion of the report stated: "I was making coffee in [the] department's kitchen. I was standing at [the] coffee pot [and] when I turned to walk back to my desk, I felt my shoe suddenly on the floor. As I pulled myself up and leaned against the counter I realized I couldn't walk." Johme's manager's portion of the report, which was not seen by Johme at the time the report was completed, stated that Johme was "making coffee in the kitchen, turned to put [coffee] grounds in [the] trash, twisted [her] ankle and fell off [her] shoe, fell backwards and landed on [the] floor."

Johme was taken by ambulance to the emergency room after her fall. The medical records from the emergency room indicated that Johme reported that she had tripped at work because of the shoes she was wearing. Johme reported low back pain and left leg pain, and an X-ray of her hips and pelvis showed a fracture on her right side. She was admitted to the hospital for pain control and physical therapy, but she did not undergo surgery to her hip and pelvis.[3]

Johme sought workers' compensation benefits related to her fall, and an administrative law judge (ALJ) denied her claim for workers' compensation benefits. The ALJ found: "[Johme] was not performing her [work] duties at the time of her fall at

---

2. Johme's fall occurred either as she was finishing making the coffee or after she had made the coffee and was returning to her desk.

 The Commission's findings described Johme's fall as occurring "[a]s [she] finished making the new pot of coffee." After her fall, however, Johme reported on her office's injury report that her fall occurred when she turned to walk back to her desk, and her manager reported that Johme's fall occurred as she turned to put coffee grounds in the trash.

 Johme admitted in her testimony before the administrative law judge that she had testified in a prior deposition: "I don't remember if I was turning to go to the counter, turning to leave the room. I don't think I could have been leaving the room because I would have went to my left. I must've been going to the counter to throw something away or something I guess."

3. Johme did have surgery on her right thumb during her hospital stay. Her thumb injury was wholly unrelated to her fall in the office kitchen. At the time she was admitted to the emergency room, Johme had complained of bruising and swelling on her right hand that she reported occurred when she had closed a vehicle hatch on that hand. Johme's workers' compensation claim does not include her thumb injury.

work. [She] just fell and she would have been exposed to the same hazard or risk in her normal [nonemployment] life."

Johme appealed to the Labor and Industrial Relations Commission, which reversed the ALJ's decision.

### The Commission's Decision

The Commission's findings included: "As [Johme] finished making the new pot of coffee, she turned and twisted her right ankle, which caused her right foot to slip off of her sandal, and she fell onto her right side and then onto her back."[4] Its findings highlighted that coffee in the office kitchen was provided by St. John's for use by its employees, that employees were not required to "clock out" before getting coffee, and that it was customary for the employee who took the last cup of coffee to make a new pot. It also noted that Johme testified that she did not make coffee at home.

The Commission discussed the history of workers' compensation and the evolution of determinations of whether an injury arose out of and in the course of the employee's employment. It highlighted that caselaw had historically recognized a workers' compensation doctrine referred to as the "personal comfort doctrine," which provided that workers' compensation benefits could still be available to an employee who was injured when tending to a basic personal need while at work. The doctrine reasoned that employees' personal activities can be within the course of their employment if the activities ultimately benefit the employer.[5]

The Commission noted that the "personal comfort doctrine" was called into question after the legislature amended section 287.020.3(2) in 2005 to read:

> An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
>
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

Sec. 287.020.3(2).[6]

The Commission's decision discussed that, before this legislative amendment,

---

4. St. John's specifically challenged the Commission's finding that Johme twisted her ankle in its arguments before the court of appeals. It did not raise this argument before this Court. Section 287.495.1, RSMo 2000, instructs that "in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding." All references to section 287.495.1 are to RSMo 2000.

5. The Commission stated:
 The rationale of the ["personal comfort doctrine"] is that humans have basic needs that must be met throughout the workday (hunger, thirst, elimination) and the benefit of tending to those needs inures not only to the employee, but to the employer as well. Thus, where [1] a benefit inured to the

employer, [2] the extent of the departure from one's duties was not so great that an intent to temporarily abandon the job could be inferred, and [3] the method chosen to tend to one's comfort was not so unusual or unreasonable that the conduct could not be considered an incident of the employment, courts have routinely held that risks arising from tending to personal comfort were risks related to employment.

6. The Commission's findings included that Johme showed that her "accident was the prevailing factor in causing [her] injury." There is no issue in this appeal regarding whether Johme's fall was the prevailing factor for her injuries pursuant to section 287.020.3(2)(a). At issue, however, is whether her injury was compensable under the

courts had been applying both common law meanings and statutory limits when assessing whether a workers' compensation claimant's injury arose out of and in the course of the employment.[7] The Commission acknowledged that the 2005 amendment to section 287.020.3(2) was intended to abrogate earlier case law interpretations related to whether a worker's injury was compensable in workers' compensation because it arose out of and in the course of the worker's employment, as the legislature also enacted section 287.020.10 [8] which provides:

> In applying the provisions of this chapter, *it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of* or definition of "accident", "occupational disease", *"arising out of", and "in the course of the employment"* to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care and Rehabilitation,* 80 S.W.3d 524 (Mo.App. W.D. 2002); *Kasl v. Bristol Care, Inc.,* 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. TWA,* 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.

Sec. 287.020.10 (emphasis added).

The Commission found that Johme's injury was compensable in workers' compensation after applying the "personal comfort doctrine" together with the requirements of section 287.020.3(2). Because it determined that Johme's act of making coffee was "incidental to and related to her employment," the Commission found that it did not need to determine under section 287.020.3(2)(b) whether Johme would have been equally exposed to the hazard or risk that caused her injury during her normal non-employment life. The Commission cited *Pile v. Lake Regional Health System,* which stated the following test for determining application of section 287.020.3(2)(b):

> The first step is to determine whether the hazard or risk is related or unrelated to the employment. Where the activity giving rise to the accident and injury is integral to the performance of a worker's job, the risk of the activity is related to employment. In such a case, there is a clear nexus between the work and the injury. Where the work nexus is clear, there is no need to consider whether the worker would have been equally exposed to the risk in normal non-employment life. Only if the hazard or risk is unrelated to the employment does the second step of the analysis apply. In that event, it is necessary to determine whether the claimant is equally exposed to this hazard or risk in normal, non-employment life.

321 S.W.3d 463, 467 (Mo.App.2010).

The Commission found that there was no need to undertake the second-step of the *Pile* test given that it had already

---

terms of section 287.020.3(2)(b)'s requirement that an injury compensable in workers' compensation not be from a "hazard or risk unrelated to the employment to which [she] would have been equally exposed in normal nonemployment life."

**7.** This Court explained in *Miller v. Missouri Highway & Transportation Commission:*

> Prior to the 2005 amendments, the [workers' compensation] act's provisions were required to be construed liberally in favor of

compensation. § 287.800, RSMo 2000. In 2005, the act was revised to provide that its provisions are to be construed strictly and to require the evidence to be weighed impartially without giving any party the benefit of the doubt. § 287.800.

287 S.W.3d 671, 673 (Mo. banc 2009).

**8.** References to section 287.020.10 are to RSMo Supp.2011, the most recent version of the statute. The statute has not been changed since its enactment in 2005.

determined that Johme's coffee-making was an activity related to her employment. It awarded Johme temporary total disability payments, past medical expenses, and permanent partial disability payments.[9]

St. John's appeals the Commission's decision.[10]

## Argument on Appeal

St. John's contends that the Commission erred in awarding benefits to Johme because the award was not supported by sufficient competent evidence to meet section 287.020.3(2)'s burden to show that Johme's injury arose out of and in the course of her employment.

## Standard of Review

On appeal, this Court reviews the Commission's decision to determine if it is "supported by competent and substantial evidence upon the whole record." Mo. Const. article V, sec. 18. Section 287.495.1 provides in relevant part:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

 Nothing requires this Court to review the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the Commission's decision. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003). The whole record is considered to determine if there is sufficient competent and substantial evidence to support the Commission's award. *Id.* "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* "When the relevant facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law requiring *de novo* review." *Miller,* 287 S.W.3d at 672. Johme, as the workers' compensation claimant, bears the burden of proof to show that her injury was compensable in workers' compensation. *See Sanderson v. Producers Comm'n Ass'n,* 360 Mo. 571, 229 S.W.2d 563, 566 (1950).

## Did Johme's Injury Arise Out of and in The Course of Her Employment?

Johme's injury is compensable in workers' compensation only if it arose out of and in the course of her employment pursuant to section 287.020.3(2). The express terms of the workers' compensation statutes as revised in 2005 instruct that section 287.020.3(2) must control any determination of whether Johme's injury shall be deemed to have arisen out of and in the course of her employment. *See* sec.

9. Commissioner Alice Bartlett dissented from the Commission's decision. She articulated her belief that Johme's injury was not compensable in workers' compensation because Johme failed to show that her injury arose out of her employment because she did not show

a "direct causal connection between [her] injury and the employment."

10. This case was transferred post-opinion to this Court by the court of appeals. Mo. Const. art. V, sec. 10.

287.020.10 (expressly noting the legislature's intent to abrogate prior case law definitions applicable to workers' compensation, including case law interpretations for the definitions of "arising out of" and "in the course of the employment"). And the legislature has left no doubt that the provisions of section 287.020.3(2) are to be construed strictly. *See* sec. 287.800 ("courts shall construe the provisions of [chapter 287] strictly").

In Johme's case, there is no issue regarding whether her fall at her workplace was the prevailing factor in causing the injury for which she seeks workers' compensation. As such, a discussion of her case in the context of subsection 287.020.3(2)(a) is not required. Instead, the issue in this case is confined to the application of subsection 287.020.3(2)(b), which instructs that Johme's injury "shall be deemed to arise out of and in the course of [her] employment *only if . . . it [did] not come from a hazard or risk unrelated to [her] employment to which [she] would have been equally exposed outside of and unrelated to [her] employment in [her] normal nonemployment life.*" *See* sec. 287.020.3(2)(b) (emphasis added); *see Miller*, 287 S.W.3d at 673 ("Section 287.020.3(2)(b) states that an injury shall be deemed to arise out of employment only if '[i]t does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal non-employment life.'").

Section 287.020.10 expressly abrogated cases that permitted recovery of workers' compensation benefits for injuries caused by risks to which the employee would have been exposed equally outside of work. *See Miller*, 287 S.W.3d at 674 n. 2.[11]

### Did Johme Show A Causal Connection Between Her Work And Her Injury?

■ For an injury to be deemed to arise out of and in the course of the employment under section 287.020.3(2)(b), the claimant employee must show a causal connection between the injury at issue and the employee's work activity. *See Miller*, 287 S.W.3d at 674 (strictly construing the provisions of section 287.020.2(3)); *see also* section 287.020.2 (defining what is a compensable "accident" for workers' compensation and providing: "An injury is not compensable because work was a triggering or precipitating factor.").

This Court recently addressed the issue of causal connection in *Miller*. *Miller* considered whether workers' compensation was payable to an employee who was injured when his knee popped and began to hurt while he was walking briskly toward a truck containing repair material that was needed for his job as a road crew worker. 287 S.W.3d at 672 (noting that the uncontested facts in the case showed that the employee was "working" and "he was walking briskly toward the truck containing repair material when he felt a pop and

11. *Miller* noted that section 287.020.10 expressly abrogated *Kasl*, 984 S.W.2d 852, and *Drewes*, 984 S.W.2d 512:
 *Kasl* . . . and *Drewes* . . . interpreted section 287.020, as amended in 1993, to permit recovery where the employee's injury-causing act involved risks to which one would be exposed equally outside of work, finding that the acts would not have occurred if the employee were not at work. *Kasl* involved the manager of a residential care facility whose left foot 'fell asleep' while she was sitting waiting to dispense medication. Unaware that her foot had fallen asleep, she fell and broke her left ankle upon arising. *Drewes* involved an employee who fell and injured her ankle while carrying her lunch in a break room at work while walking across a clear floor area, without apparent cause.
 *Miller*, 287 S.W.3d at 674 n. 2

his knee began to hurt," and he "admit[ted] that his work did not require him to walk in an unusually brisk way; that he normally walks briskly at home and did nothing different than usual when walking at work that day"). *Miller* determined that the employee's injury was not compensable in workers' compensation because "the uncontested facts show[ed] that [his knee pop] injury occurred at work, in the course of employment, *but that it did not arise out of employment.*'" *Id.* at 673 (emphasis added). *Miller* explained:

> *An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved—here, walking—is one to which the worker would have been exposed equally in normal non-employment life.* The injury here did not occur because [the employee] fell due to some condition of his employment. He does not allege that his injuries were worsened due to some condition of his employment or due to being in an unsafe location due to his employment. He was walking on an even road surface when his knee happened to pop. *Nothing about work caused it* to do so. *The injury arose during the course of employment, but did not arise out of employment.* Under sections 287.020.2, .3 and .10 as currently in force, that is insufficient [to award workers' compensation].
>
> . . . . *[T]he the injury is not compensable, as there is no causal connection of the work activity to the injury other than the fact of its occurrence while at work.*

*Id.* at 674 (emphasis added).

The Commission failed to cite *Miller* in its assessment of Johme's case. *Miller*'s holding is controlling. Contrary to the Commission's considerations, *Miller*'s focus was not on what the employee was doing when he popped his knee—he was walking to a truck to obtain materials for his work—but rather focused on whether the risk source of his injury—walking—was a risk to which he was exposed equally in his "normal nonemployment life." *Miller* instructs that it is not enough that an employee's injury occurs while doing something related to or incidental to the employee's work; rather, the employee's injury is only compensable if it is shown to have resulted from a hazard or risk to which the employee would not be equally exposed in "normal nonemployment life."

■ In Johme's case, the Commission erred in focusing its assessment on whether Johme's activity of making coffee was incidental to her employment. The evidence did not link her act of making coffee as the cause of her injury and fall. Instead, the issue in Johme's case was whether the cause of her injury—turning and twisting her ankle and falling off her shoe—had a causal connection to her work activity other than the fact that it occurred in her office's kitchen while she was making coffee. The assessment of Johme's case necessitated consideration of whether her risk of injury from turning, twisting her ankle, and falling off her shoe was a risk to which she would have been equally exposed in her "normal nonemployment life." In her case, no evidence showed that she was not equally exposed to the cause of her injury—turning, twisting her ankle, or falling off her shoe—while in her workplace making coffee than she would have been when she was outside of her workplace in her "normal nonemployment life."[12]

12. A focus in Johme's case was her testimony that she did not make coffee at home. But whether Johme made coffee at home was an irrelevant distraction from the risk that was

Under the statutory standards for workers' compensation and under the case law outlined by this Court in *Miller*, Johme's injury was not compensable in workers' compensation because she failed to show that her *injury* "[arose] out of and in the course of [her] employment" as mandated by section 287.020.3(2). Johme failed to meet her burden to show that her injury was compensable because she did not show that it was caused by risk related to her employment activity as opposed to a risk to which she was equally exposed in her "normal nonemployment life." *See* sec. 287.020.3(2)(b).

### Conclusion

For the foregoing reasons, the Commission's decision is reversed.

BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., concur.

TEITELMAN, C.J., dissents in separate opinion filed.

PREBIL, Sp.J., concurs in opinion of TEITELMAN, C.J.

DRAPER, J., not participating.

RICHARD B. TEITELMAN, Chief Justice, dissenting.

I respectfully dissent. Johme should receive worker's compensation benefits because her injury was caused by a work-related risk.

The dispositive issue is whether Johme's injury resulted "from a hazard or risk unrelated to the employment to which [she] would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." *Section* 287.020.3(2)(b).[1] The plain language of section 287.020.3(2)(b) dictates a two-step analysis. The first step is to determine whether the hazard or risk is related or unrelated to the employment. If the risk is related to employment, the employee is entitled to compensation and the equal exposure analysis does not apply. If, however, the risk is unrelated to employment, the statute requires an analysis of whether the risk is one to which the employee would have been exposed equally in normal nonemployment life.

In this case, the principal opinion concludes that Johme showed that the act of making coffee was work-related but failed to show that the injury sustained while making coffee was caused by a risk related to her employment. In other words, the principal opinion draws a bright-line distinction between an injury that merely happens while one is working and an injury that is caused by working. This distinction is not convincing when, as in this case, the injury occurs during the performance of a work-related task. The work-related task and the injury are inextricably entwined. The fact that the injury occurred while one is working is, in most cases, the necessary factual predicate for showing that the injury is work-related.

As the principal opinion notes, Johme was injured while performing a work-related task. The most logical conclusion to draw from that fact is that her injury resulted from a work-related risk. As noted above, if the risk is related to employment, the employee is entitled to compensation and the equal exposure analysis does not apply. Under this analysis, the

---

causally connected to her injury, as her injury was not *caused by* making coffee. No evidence was presented to show that Johme's "normal nonemployment life" exposed her to a lesser risk of turning, twisting her ankle, or falling off her shoe as compared to the risk she faced the day she fell in the workplace.

1. References to section 287.020.3(2) are to RSMo Supp.2011.

commission's award of workers' compensation benefits should be affirmed. Under the principal opinion's analysis, office workers, retail clerks, computer programmers and others in relatively sedentary professions will be barred from obtaining workers' compensation benefits when they are injured while performing many of their work-related tasks. While the 2005 amendments certainly were drafted to limit worker's compensation awards, there is nothing in the plain language of section 287.020 that necessitates such a restrictive analysis.