

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| EDWARD GLEASON, SR., | ) | |
| | ) | |
| Appellant, | ) | WD77607 |
| | ) | |
| v. | ) | OPINION FILED:  March 3, 2015 |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI - CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

Before Division One:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Mark D. Pfeiffer, Judge

Edward Gleason, Sr. ("Gleason"), who appears *pro se*, appeals from the Labor and

Industrial Relations Commission's ("Commission") decision denying his claim for

permanent disability benefits from the Second Injury Fund following Gleason's 20- to 25-

foot fall from the top of a railcar he was inspecting.  The Commission concluded that

Gleason's inability to explain *why* he fell was "fatal to [his] claim," negating, as a matter

of law, his ability to prove that his injuries did not come from a hazard or risk unrelated

to his employment and as to which he was equally exposed in normal nonemployment

life.  Because the Commission erroneously declared and applied the law, we reverse and remand for further proceedings consistent with this opinion.

## Factual and Procedural History

Ceva Logistics employed Gleason as a transportation coordinator.  Ceva Logistics works with Ford Motor Company to deliver new vehicles throughout the United States and Mexico.  Gleason worked in a supervisory position over a crew of five to seven employees.  He testified:

> We would load [the vehicles] on trains and secure them down . . . . [I]t could be five railroad cars or ten railroad cars of trains which would generally be 75, 80 or 100 some new cars . . . . [T]hen I would go up [onto the railcars] and inspect and make sure everything was right and then we would ship it off.

Gleason was employed in that capacity from February 2007 to November 2007.

On August 5, 2007, Gleason was walking atop one of the railcars conducting an inspection when he fell approximately 20 to 25 feet to the ground.  Gleason sustained injuries to his head, neck, right shoulder, clavicle, and ribs.  Gleason has no memory of the circumstances leading up to the fall, the fall itself, or the three days after the fall when he was hospitalized.  Accordingly, Gleason cannot explain why he fell.  No one testified to having seen the fall.

Gleason filed a claim for workers' compensation against Ceva Logistics.  Gleason also asserted that he was entitled to permanent total disability benefits from the Second Injury Fund.

Ceva Logistics and Gleason entered into a compromise settlement that was approved by an Administrative Law Judge ("ALJ").  The Stipulation for Compromise

Settlement stated that Gleason and Ceva Logistics agreed that "[Gleason], while in the employment of [Ceva Logistics], sustained an accidental injury/occupational disease arising out of and in the course of [Gleason's] employment and that an accidental injury/occupational disease resulted in injury to [Gleason]." Ceva Logistics agreed to pay Gleason a lump sum of $34,000 in exchange for a release based on a determination that Gleason sustained a permanent disability of 15 percent at the 232 week level on the right side, as well as 13 percent body as a whole referable to the cervical region.[1] Gleason's claim against the Second Injury Fund remained pending.

An ALJ held a hearing on Gleason's claim against the Second Injury Fund. Gleason and the Second Injury Fund entered into various stipulations prior to the hearing leaving three issues to be determined: (1) "whether [Gleason] sustained an accident arising out of and in the course and scope of his employment"; (2) "whether [Gleason] suffered any disability either permanent partial or permanent total"; and (3) "whether the Second Injury Fund is liable to [Gleason] for any disability compensation."

After considering the evidence presented at the hearing, the ALJ issued its written decision denying Gleason's claim for benefits from the Second Injury Fund. The ALJ concluded that Gleason did not meet his burden of proving that he suffered a work injury on August 5, 2007, in that there was no evidence presented regarding the cause of Gleason's fall. The ALJ also concluded that Gleason was employable on the open labor market after his fall from the railcar, and that his inability to find work resulted from a

---

[1] In addition, Ceva Logistics had paid temporary total disability compensation totaling $4,654.10, as well as medical expenses totaling $85,735.36.

3

worsening cardiac condition and the effects of a stroke that occurred after Gleason's fall from the railcar.

Gleason filed an application for review with the Commission. The Commission issued its Final Award Denying Compensation, with one member dissenting. The Final Award did not incorporate the findings of the ALJ. The majority of the Commission concluded that because Gleason was unable to explain *why* he fell, Gleason had not met his burden to prove that "his injury did not come from a hazard or risk unrelated to his employment to which workers would be equally exposed outside of and unrelated to employment in their normal nonemployment lives." Thus, the majority concluded that Gleason failed to show that his injury arose out of and in the course of his employment with Ceva Logistics. The Commission did not address whether Gleason would otherwise have been entitled to benefits from the Second Injury Fund.

Gleason appeals.

## Standard of Review

We review the findings of the Commission, not the findings of the ALJ. *Smith v. Capital Region Med. Ctr.*, 412 S.W.3d 252, 258 (Mo. App. W.D. 2013). We may modify, reverse, remand for rehearing, or set aside the award of the Commission only if we determine that the Commission acted without or in excess of its powers, that the award was procured by fraud, that the facts found by the Commission do not support the

4

award, or that there was not sufficient competent evidence to warrant making the award. Section 287.495.1.[2]

"We review the whole record to determine whether there is sufficient competent and substantial evidence to support the award or if the award is contrary to the overwhelming weight of the evidence." *Smith*, 412 S.W.3d at 258. "The Commission is free to believe or disbelieve any evidence, and we defer to the Commission's credibility determinations." *Id.* The Commission's determinations of law, however, are reviewed independently. *Id.*

### Analysis

Although Gleason's Brief sets forth four points on appeal, the limited argument in his Brief primarily claims that the Commission erred in concluding that this fall from a great height while performing the duties of his work did not result in a compensable injury.[3]

"'The Second Injury Fund compensates injured workers who are permanently . . . disabled by a combination of past disabilities and a primary work injury.'" *Second Injury Fund v. Cook*, 323 S.W.3d 105, 110 (Mo. App. W.D. 2010) (quoting *Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo. App. W.D. 2005)). "[A] claimant's preexisting

---

[2] All statutory references to Chapter 287 are to the version enacted by the legislature in 2005 unless otherwise indicated. As Gleason's injury occurred in 2007, his entitlement to workers' compensation benefits is controlled by the 2005 version of the Workers' Compensation Act in effect at that time.

[3] Gleason's Brief suffers several Rule 84.04 deficiencies. However, we are readily able to discern from Gleason's Brief that his principal claim of error involves the Commission's determination that his inability to explain why he fell renders his injuries not compensable as a matter of law. The Second Injury Fund plainly understands this to be Gleason's primary allegation as evidenced by its Brief addressing that very issue. We thus exercise our discretion to address the merits of Gleason's claim, notwithstanding his technical noncompliance with Rule 84.04. *Emig ex rel. Emig v. Curtis*, 117 S.W.3d 174, 177 (Mo. App. W.D. 2003) ("We will not exercise our discretion to dismiss an appeal for technical deficiency under Rule 84.04 unless the deficiency impedes disposition on the merits." (internal quotation marks omitted)).

disabilities are irrelevant until employer's liability for the last injury is determined." *Lewis v. Second Injury Fund*, 435 S.W.3d 144, 157 (Mo. App. E.D. 2014). Here, the employer, Ceva Logistics, stipulated its liability for Gleason's 2007 injury and, relevant to this case, stipulated that Gleason's injury arose out of and in the course of Gleason's employment. The Second Injury Fund did not join in this stipulation, however, and remained free to litigate the issue conceded by Gleason's employer. *Hoven v. Second Injury Fund*, 414 S.W.3d 676, 680 (Mo. App. E.D. 2013) ("The [Second Injury Fund] is not bound by terms of settlement agreements to which it is not a party. Nor is the [Second Injury Fund] collaterally estopped by a settlement agreement to which it is not a party." (citations omitted)). At most, Gleason's settlement with his employer was evidence that the Commission could consider. *Id.* Gleason thus remained obligated to prove all of the essential elements of his workers' compensation claim against the Second Injury Fund. *See Angus v. Second Injury Fund*, 328 S.W.3d 294, 299 (Mo. App. W.D. 2010) ("The claimant in a workers' compensation case has the burden to prove all essential elements of her claim . . . .").

As the employer, Ceva Logistics was responsible to furnish Gleason "compensation under the provisions of [Chapter 287] for personal ***injury*** *. . .* ***by accident*** *. . .* ***arising out of and in the course of the employee's employment***." Section 287.120 (emphasis added). "Accident" is statutorily defined as "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift."

6

Section 287.020.2. The Commission found that Gleason suffered an "accident" when he fell from the railcar.

However, not every "injury . . . by accident" is compensable. "Injury" is statutorily defined as "an injury which has arisen out of and in the course of employment." Section 287.020.3(1). "The express terms of the workers' compensation statutes as revised in 2005 instruct that section 287.020.3(2) must control any determination of whether [a claimant's] injury shall be deemed to have arisen out of and in the course of [his or] her employment." *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012). Section 287.020.3(2) provides:[4]

> An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a)  It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
>
> (b)  It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

The Commission found that Gleason's accident was the prevailing factor in causing his injuries as required by section 287.020.3(2)(a). The Commission concluded, however, that Gleason did not prove the second factor required by section 287.020.3(2)(b). The Commission concluded as a matter of law that because Gleason could not explain *why* he fell, "we do not know what hazards or risks gave rise to employee's fall, [so that] we cannot determine if those hazards or risks are related or

---

[4] Gleason's accident occurred in 2007 and his claim against the Second Injury Fund was thus plainly controlled by the 2005 version of the Workers' Compensation Act. Inexplicably, throughout its Brief and during oral argument, the Second Injury Fund relies on the 2000 version of the Workers' Compensation Act to urge that Gleason failed to establish his claim. This is plainly incorrect.

unrelated to employment and we cannot determine if workers are equally exposed to those hazards or risks outside of and unrelated to employment in their normal nonemployment lives."

In reaching this conclusion, the Commission misapplied the law. "For an injury to be deemed to arise out of an in the course of the employment under section 287.020.3(2)(b), the claimant employee must show a causal connection between the injury at issue and the employee's work activity." *Johme*, 366 S.W.3d at 510. As the Supreme Court noted in *Johme*, the nature of this "causal connection" was addressed in *Miller v. Missouri Highways & Transportation Commission*, 287 S.W.3d 671 (Mo. banc 2009). 366 S.W.3d at 510-11.

In *Miller*, the Court "considered whether workers' compensation was payable to an employee who was injured when his knee popped and began to hurt while he was walking briskly toward a truck containing repair material that was needed for his job." *Johme*, 366 S.W.3d at 510 (citing *Miller*, 287 S.W.3d at 672). In concluding that the claimant's injury did not arise out of and in the course of employment, *Miller* explained:

> ***An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved--here, walking--is one to which the worker would have been exposed equally in normal non-employment life.*** The injury here did not occur because the employee fell due to some condition of his employment. He does not allege that his injuries were worsened due to some condition of his employment or due to being in an unsafe location due to his employment. He was walking on an even road surface when his knee happened to pop. ***Nothing about work caused it*** to do so. ***The injury arose during the course of employment, but did not arise out of employment***.

8

> *. . . [T]he the [sic] injury is not compensable, as there is no causal connection of the work activity to the injury other than the fact of its occurrence while at work*.

*Johme*, 366 S.W.3d at 511 (quoting *Miller*, 287 S.W.3d at 674).

"*Miller's* focus was not on what the employee was doing when he popped his knee--he was walking to a truck to obtain materials for his work--but rather focused on *whether the risk source of his injury*--walking--*was a risk to which he was exposed equally in his 'normal nonemployment life*.'" *Id.* (emphasis added). "*Miller* instructs that it is not enough that an employee's injury occurs while doing something related to or incidental to the employee's work; rather, the employee's *injury is only compensable if it is shown to have resulted from a hazard or risk to which the employee would not be equally exposed in 'normal nonemployment life*.'" *Id.* (emphasis added).

The "causal connection" standard announced in *Miller* and further addressed in *Johme* thus first requires identification of the risk source of a claimant's injury, that is, identification of the *activity that caused the injury*, and then requires a comparison of that risk source or activity to normal nonemployment life. In *Miller*, the "risk source," that is to say, the activity that caused the injury, was "walking on an even road surface." 287 S.W.3d at 674. Not surprisingly, *Miller* concluded that the claimant was not exposed to a risk that was "due to some condition of his employment"; in other words, the risk source--walking on an even road surface--was one to which the claimant would have been exposed in normal nonemployment life. *Id.* In *Johme*, the "risk source," that is to say, the activity that caused the injury, was "turning and twisting [an] ankle and falling off [the claimant's] shoe." 366 S.W.3d at 511. Not surprisingly, *Johme* concluded that "no

9

evidence showed that [the claimant] was not equally exposed to the cause of her injury--turning, twisting her ankle, or falling off her shoe--while in her workplace . . . than she would have been when she was outside of her workplace in her 'normal nonemployment life.'" *Id*.

Here, the Commission expressly found that Gleason "was atop a railcar performing an inspection as part of his duties for employer." The Commission expressly found that Gleason "fell 20-25 feet from the top of the railcar and landed on the ground." The Commission expressly found that Gleason's fall *from this height* caused Gleason's injuries. Plainly, the "risk source," that is the activity which caused Gleason's injuries, was falling from a railcar 20 to 25 feet above the ground. This is not a risk source to which Gleason would have been exposed in his "normal nonemployment life." Borrowing from *Johme*, "[the Commission's] focus [should] not [have been] on what [Gleason] was doing when he [suffered his injuries]--he [had fallen from the top of a railcar where he was conducting an inspection]--but rather [should have been] focused on whether the risk source of his injury--[falling 20 to 25 feet from the top of a railcar]--was a risk to which he was exposed equally in his 'normal nonemployment life.'" 366 S.W.3d at 511. Plainly, there was a causal connection between Gleason's work activity (working on the top of a railcar) and his injury (injuries incurred after falling 20 to 25 feet from that work location).

The Commission acknowledged that Gleason satisfied the "causal connection" standard addressed in *Johme*. The Commission held:

10

If this were the only judicial guidance regarding how to apply section 287.020.3(2)(b), we would be inclined to agree with the rationale of the dissenting opinion and find that [Gleason] has shown section 287.020.3(2)(b) is satisfied in this case **because [Gleason] has shown a causal connection between the height at which he was required to perform his duties and his injury**.

(Emphasis added.) Yet, despite controlling Supreme Court precedent on the point, the Commission opted instead to rely on two intermediate appellate decisions out of our Southern District for the alleged proposition that section 287.020.3(2)(b) is not established *as a matter of law* unless an injured worker cannot explain *why* he or she fell. This was legally erroneous.

The Commission relied on *Bivins v. St. John's Regional Health Center*, 272 S.W.3d 446 (Mo. App. S.D. 2008), and *Porter v. RPCS, Inc.*, 402 S.W.3d 161 (Mo. App. S.D. 2013). We need not address *Bivins*. Even presuming its holding is inconsistent with *Miller* and *Johme*, a determination we need not and do not make, *Bivins* was decided prior to both Supreme Court cases. It is not controlling.

The Commission's reliance on *Porter* is equally misplaced. In *Porter*, a claimant fell on a bathroom floor at her place of employment. 402 S.W.3d at 164. The claimant "did not recall how she got on the floor," though she speculated the floor was wet. *Id.* at 165. The claimant told her grandson that she "went to the restroom and she woke up on the floor." *Id.* The evidence established that the bathroom floor was an ordinary tile floor with no particular hazards that might have caused the claimant to slip or trip. *Id.* at 166-67. The Commission concluded that the claimant suffered an "accident," but that "[she] failed to establish as a factual proposition, the risk or hazard that resulted in her

11

fall." *Id*. at 170. On appeal, the Southern District acknowledged *Johme*, and noted that "[i]n order to show a causal connection under *Johme*, an employee **must identify the cause of the injury**." *Id.* at 172 (emphasis added).

To this point in its discussion, *Porter* is indistinguishable from *Miller*. Just as in *Miller*, the "risk source," that is the activity that caused Porter's injury, was walking on a smooth surface. Just as in *Miller*, while engaged in this "risk source," Porter was injured. The section 287.020.3(2)(b) inquiry was thus required to turn to whether the "risk source," that is the activity causing the injury, was one to which the claimant would have been equally exposed outside of and unrelated to the employment in normal nonemployment life. It is a matter of common acceptance that the "risk source" of walking across a smooth surface is a "risk source" a worker is equally exposed to in normal nonemployment life. Thus, **in such cases**, where the identified cause of an accident involves a risk source to which a worker is equally exposed in normal nonemployment life, unless the worker can establish something about the "risk source" that differentiates it from the equivalent risk in normal nonemployment life, the worker will be unable to establish the required causal connection between a work activity and the injuries sustained. Consistent with this observation, Porter was not entitled to benefits not merely because she couldn't explain why she fell, but because she fell while engaged in a risk source encountered in normal nonemployment life. Under that factual circumstance, because "Porter failed to establish how she fell . . . , [she] ***therefore, failed to show that she was exposed to an unusual risk of injury that was not shared by the general public***." *Porter*, 402 S.W.3d at 174 (emphasis added). The holding in *Porter*

12

simply recognizes that the hazard or risk of falling when walking on a smooth surface is a hazard or risk to which workers would have been exposed outside and unrelated to the employment in normal nonemployment life. 402 S.W.3d at 172-73 (citing *Miller*, 287 S.W.3d at 673). The Commission erroneously concluded that *Porter* stands for the proposition that *every* unexplained fall in the workplace is not compensable, as a matter of law, without regard to the risk source related to the fall.[5]

Gleason's risk source was not walking on a smooth surface at ground level, as was the case in *Miller* and *Porter*. Gleason's risk source was working on a railcar 20 to 25 feet above the ground. Because this risk source is plainly not one to which a worker would be exposed in normal nonemployment life, Gleason's fall while engaged in the risk source establishes "a causal connection between [his] injur[ies] at issue and [his] work activity." *Johme*, 366 S.W.3d at 510. Borrowing from *Miller*, Gleason's "injuries were worsened . . . due to being in an unsafe location due to his employment. He was [working on the top of a railcar when he happened to fall 20-25 feet]." 287 S.W.3d at 674. In contrast to the outcome in *Miller*, Gleason fell 20 to 25 feet to the ground because of his required work activity. *Id.* It was thus not necessary for Gleason to establish *why* he fell because he had already established that he "***was exposed to an unusual risk of injury that was not shared by the general public***." *Porter*, 402 S.W.3d at 174 (emphasis added).

---

[5] In fact, to read *Porter* as the Commission does is to attribute to *Porter* the announcement of a standard for assessing whether a workplace injury arose out of and in the course of employment that is inconsistent with *Johme* and *Miller*, evidenced by the Commission's acknowledgement that Gleason satisfied the standard set forth in *Johme*, but failed to satisfy the standard purportedly set forth in *Porter*. We are confident that the Southern District had no intention of disregarding *Johme* and *Miller*. A simple reading of *Porter* reveals its heavy reliance on both Supreme Court decisions. The only error here is in the Commission's overly broad reading of *Porter*.

13

The Second Injury Fund argues that unless we require claimants to prove *why* they fell, we will be permitting a claimant to recover for injuries resulting from idiopathic causes. [Respondent's Brief, p. 9] We disagree. Section 287.020.3(3) does indeed provide that "[a]n injury resulting directly or indirectly from idiopathic causes is not compensable." However, as we have already noted, a claimant's burden to establish a compensable injury is limited to establishing that the injury arose out of and in the course of employment, which requires proof only of the two criteria set forth at section 287.020.3(2)(a) and (b). *Johme*, 366 S.W.3d at 509. Once these criteria are established, any claim that an injury is nonetheless not compensable is in the nature of an affirmative defense. *See, e.g., Crumpler v. Wal-Mart Assocs., Inc.*, 286 S.W.3d 270, 273 (Mo. App. S.D. 2009) (holding that claimant was aware prior to her hearing of employer's theory of defense that claimant's injury was idiopathic, rendering it harmless error that the defense was not pled by the employer); *see also Taylor v. Contract Freighters, Inc*, Injury No.: 06-104584, 2009 WL 1719443, at *8 (Labor & Indus. Relations Comm'n June 16, 2009) (holding that the exclusion from category of compensable injuries of an injury resulting directly or indirectly from idiopathic causes "is in the nature of an affirmative defense to employer," and that it was not the claimant's burden to prove an injury was not idiopathic, but instead the employer's burden to prove that it was).[6] Here, the Second Injury Fund

---

[6] We recognize that administrative agency decisions are not binding precedent on Missouri courts. *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 120 S.W.3d 732, 736 (Mo. banc 2003). However, it is also true that "[t]he interpretation and construction of a statute by an agency charged with its administration is entitled to great weight." *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. banc 1972). Here, a plain reading of section 287.020.3 supports the Commission's view that section 287.020.3(3) identifies an exclusion from what would otherwise be a compensable injury. "An affirmative defense is one that may defeat a plaintiff's cause of action because of facts which allow the defendant to avoid legal responsibility." *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co*., 23 S.W.3d 874, 877 (Mo. App. W.D. 2000). An "exception" or "exclusion" from the

neither alleged, nor sought to establish, that Gleason's injuries resulted directly or indirectly from an idiopathic cause.

Gleason's injuries arose out of and in the course of his employment with Ceva Logistics. The Commission committed legal error in concluding otherwise.

Gleason's first and second points on appeal are granted.

## Conclusion

We reverse and remand this matter to the Commission for further proceedings consistent with this Opinion.[7]

_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

---

universe of otherwise compensable injuries is plainly an affirmative defense. *See, e.g.*, *id.* at 877-78 (addressing that exclusions to coverage in insurance policies are affirmative defenses).

[7] The ALJ who heard Gleason's case determined not only that Gleason failed to prove that he incurred an injury as statutorily defined, but as well that he did not establish that he was permanently disabled by a combination of past disabilities and a primary work injury as to trigger Second Injury Fund liability. The Commission did not adopt the findings of the ALJ, and in its Final Award, did not address whether Gleason was permanently disabled by a combination of past disabilities and a primary work injury as to trigger Second Injury Fund liability. That issue remains to be addressed and determined by the Commission on remand.