

# In the Missouri Court of Appeals
## Western District

BONNIE JENSEN-PRICE,                )
                    Appellant,      )
                                    )
v.                                  )          WD79526
                                    )
ENCOMPASS MEDICAL GROUP and         )
TREASURER OF THE STATE OF           )          FILED: August 23, 2016
MISSOURI - CUSTODIAN OF THE         )
SECOND INJURY FUND,                 )
                    Respondents.    )

## APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### BEFORE VICTOR C. HOWARD, PRESIDING JUDGE, LISA WHITE HARDWICK AND EDWARD R. ARDINI, JR., JUDGES

Bonnie Jensen-Price appeals the Labor and Industrial Relations Commission's ("Commission") decision denying her claim for permanent total disability benefits after a maintenance worker's cart collided with her leg and caused her to fall as she was engaged in a work activity for her job with Encompass Medical Group ("Employer").  Jensen-Price contends the Commission's decision constituted an erroneous application of the law and was not supported by the evidence.  For reasons explained herein, we reverse the Commission's decision and remand the case for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Jensen-Price is 66 years old. She graduated from high school, received her RN certificate, and completed her coursework and certification to be a nurse practitioner. Jensen-Price worked as a nurse practitioner for Employer for over 30 years. As a nurse practitioner, her job duties included evaluating, treating, and diagnosing patients; ordering labs and tests; interacting with patients, which sometimes required her to lift heavy patients; and computerized charting. Jensen-Price worked ten or more hours per day and was on her feet for almost eight hours each day. She worked five days a week and took eight hours of work home to complete each weekend. She rarely missed work and received raises and good work evaluations.

Jensen-Price saw patients in Employer's office, which was in a leased suite on the fourth floor of a commercial office building. Employer's office was accessible by taking either the stairs or elevators to the fourth floor, then walking down a hallway to the Employer's suite.

On August 6, 2010, Jensen-Price left Employer's office at approximately 7:00 p.m. and walked down the hallway to the elevator. She was carrying her purse on one arm and had her laptop computer, which she was taking home to perform work for Employer, in a rolling briefcase that she was pulling with her other arm. When the elevator door opened, it appeared dark inside the elevator, and no one came out of the elevator. Jensen-Price started to walk into the elevator when, all of a sudden, a housekeeping cart came out of the elevator and

2

hit her leg, causing her to fall to the floor. The floor was carpeted concrete. Jensen-Price injured her back and the back of her head in the fall, and was diagnosed with a fracture of the first lumbar vertebra and a disk herniation at the L4-5 level.

Jensen-Price requested treatment for her injuries from Employer, but Employer denied her request. On her own, Jensen-Price sought out pain management medications, injections, and surgical repair of her back injury, with follow-up physical therapy. She developed post-surgical complications, including a post-operative infection in her incision site and a pulmonary embolism. The infection has caused her to have ongoing pain at the surgical site. After her back surgery, Jensen-Price suffered a heart attack, which required stent placement. Her medical bills thus far total $77,703.13.

Since her 2010 accident, Jensen-Price continues to have significant back pain, which she rates a six out of ten on the pain scale. She takes narcotic pain medication and muscle relaxers because the pain in her back never goes away and causes aching in her hips and legs. Jensen-Price's back pain interrupts her sleep, causing her to get only four to six hours of sleep a night. Consequently, she sometimes naps during the day and needs to lie down, with a heating pad on her back, for 30 minutes to an hour up to three times each day. As a result of her head injury from the incident, she continues to have occasional headaches, dizziness, and balance issues.

Jensen-Price has difficulty performing her own personal grooming and household chores. She cannot sit, stand, or walk for extended periods, and she uses a cane for stability while walking outdoors or on stairs. Since her accident, she no longer participates in her preferred hobbies of dancing, walking, and shopping, and she drives only short distances.

Jensen-Price filed a claim for workers' compensation benefits against Employer and the Second Injury Fund. In her claim, she alleged that her injury from the 2010 accident, plus a prior back injury and fibromyalgia, rendered her either permanently and partially disabled or permanently and totally disabled.

In December 2014, a hearing was held before an Administrative Law Judge ("ALJ") on Jensen-Price's claim. In addition to her own testimony, Jensen-Price offered medical records, medical bills, and the reports of her medical expert, Employer's medical expert, and her vocational expert. Both of the medical experts and the vocational expert opined that Jensen-Price was permanently and totally disabled.

The ALJ denied Jensen-Price's claim for compensation. The ALJ found that Employer had no control over the common areas of the building, which included the hallway where Jensen-Price sustained her injuries. The ALJ further found that the incident occurred as Jensen-Price was going from work and, because the accident did not occur on property owned or controlled by Employer, her injury was not compensable.

4

Jensen-Price appealed to the Commission. The Commission found that, because Jensen-Price was carrying her laptop with her for the purpose of performing some work for Employer at her home, she was engaged in the process of going from one worksite to another when the accident occurred. As a result, the Commission determined that the ALJ's application of the extension of premises doctrine, which is an exception to the going to and from work rule, was not appropriate in this case. Rather, the Commission concluded that compensability hinged on whether Jensen-Price established that her employment exposed her to a greater risk of injury than that faced in her normal nonemployment life.

On this issue, the Commission found facts in Jensen-Price's employment to support an inference that she was exposed to a greater risk than in her nonemployment life:

> Certain facts surrounding employee's accident might support at least an *inference* of greater risk: the darkened elevator, the fact that employee was leaving work after hours (suggesting she might have been more likely to encounter a maintenance worker with a cleaning cart), or the fact that she was carrying work in a rolling briefcase, which may have affected her balance and her ability to keep herself from falling or from mitigating the consequences of her fall.

The Commission declined to infer an increased risk from those facts, however, because it found the record "too vague" to do so. The Commission explained:

> After careful consideration, however, we deem the record simply too vague to support affirmative findings as to any of these possible indicators of increased risk. This is because employee did not testify that pulling the rolling briefcase affected her balance, or that it was unusual for the elevator to be dark, or that she did not typically

5

encounter maintenance workers (or their carts) during normal business hours.  It was employee's burden to establish an increased risk, and we are concerned that if we were to infer an increased risk from the circumstances of which employee did testify, we would stray into the realm of advocacy.

Therefore, the Commission upheld the denial of compensation.  Jensen-Price appeals.

### STANDARD OF REVIEW

We will not disturb the award in a workers' compensation case unless the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to support the award.  § 287.495.1.[1] In deciding whether there was sufficient competent and substantial evidence to support the Commission's award, we examine the evidence in the context of the whole record.  *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003).  "Nothing requires this Court to review the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the Commission's decision."  *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012).

We defer to the Commission's factual findings and credibility determinations. *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012). Where the evidence before the Commission would warrant either of two opposed findings, we are bound by the Commission's decision, "'and it is irrelevant that

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

6

there is supportive evidence for the contrary finding.'" *Id*. (citation omitted). We review the Commission's determinations of law *de novo*. *Lincoln Univ. v. Narens*, 485 S.W.3d 811, 815 (Mo. App. 2016).

**ANALYSIS**

Jensen-Price's injury is compensable only if it arose out of and in the course of her employment pursuant to [S]ection 287.020.3(2). Section 287.020.3(2) provides:

> An injury shall be deemed to arise out of and in the course of the employment only if:
>
> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and
>
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

It is undisputed that Jensen-Price's fall was the prevailing factor in causing her injury; thus, no discussion of Section 287.020.3(2)(a) is necessary. *See Johme*, 366 S.W.3d at 510. Instead, this case hinges on Section 287.020.3(2)(b)'s requirement that the injury did "not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life."

"For an injury to be deemed to arise out of and in the course of the employment under section 287.020.3(2)(b), the claimant employee must show a causal connection between the injury at issue and the employee's work activity."

7

*Johme*, 366 S.W.3d at 510 (citing *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 674 (Mo. banc 2009)).  In other words, the employee must demonstrate that she was injured *because* she was at work and not simply *while* she was at work.  *Wright v. Treasurer of Missouri as Custodian of Second Injury Fund*, 484 S.W.3d 56, 63 (Mo. App. 2015).  Whether an injury is causally connected to the employee's work under Section 287.020.3(2)(b) "first requires identification of the risk source of a claimant's injury, that is, identification of the *activity that caused the injury*, and then requires a comparison of that risk source or activity to normal nonemployment life."  *Gleason v. Treasurer of State of Missouri-Custodian of Second Injury Fund*, 455 S.W.3d 494, 499 (Mo. App. 2015).

For example, in *Miller*, an employee whose knee popped while he was walking briskly at work failed to prove a causal connection because the risk source of his injury, "walking on an even road surface," was one to which he was equally exposed in his normal nonemployment life.  287 S.W.3d at 674.  Similarly, in *Johme*, an employee who fell while making coffee at work failed to prove a causal connection between her injury and work because the risk source of her injury, "turning, twisting her ankle, or falling off her shoe," was one to which she was equally exposed outside of her workplace in her normal nonemployment life.  366 S.W.3d at 511.

In contrast, in *Pope v. Gateway to the West Harley Davidson*, an employee who fell down a flight of stairs while performing a work task for his employer

8

established a causal connection because the risk source of his injury, the location of the stairs and the fact that the employee had to carry his helmet while descending the stairs, was one to which he was not equally exposed in his normal nonemployment life. 404 S.W.3d 315, 320 (Mo. App. 2012). Likewise, in *Gleason*, an employee who fell from atop a railcar while performing an inspection for his employer established a causal connection because the risk source of his injury, "falling from a railcar 20 to 25 feet above the ground," was not one to which he was equally exposed in his normal nonemployment life. 455 S.W.3d at 500. Notably in *Gleason*, this court rejected the Commission's assertion that the employee's claim should have been denied because he could not explain *why* he fell. *Id*. at 501-02. The identification of the employee's risk source and the fact that it was not one to which the worker was exposed in normal nonemployment life was sufficient to establish a causal connection. *Id*.

In this case, the Commission expressly found that Jensen-Price was "performing a work activity for employer at the time the maintenance worker's cart collided with her leg." The Commission further found that Jensen-Price's collision with the maintenance worker's cart caused her to fall and that this fall caused her injury. The Commission then identified facts that it believed would support an inference of a greater risk: the fact that she was carrying work in a rolling briefcase, which may have affected her balance or her ability to keep herself from falling or from mitigating the consequences of her fall; the fact that the elevator was dark; and the fact that she was leaving work after hours and was more likely

9

to encounter a maintenance worker's cart at that time.  Nevertheless, the Commission declined to infer an increased risk from these facts.  The Commission explained that, to make such an inference without additional testimony from Jensen-Price as to:  (1) whether pulling the briefcase affected her balance; (2) whether it was unusual for the elevator to be dark; or (3) whether she typically encountered maintenance workers or their carts during normal business hours, "would stray into the realm of advocacy."  We disagree that any additional testimony was necessary, as the facts that the Commission did find established that the risk source of Jensen-Price's injury was one to which she was not equally exposed outside of work.

The Commission's facts established that the risk source of Jensen-Price's injury was colliding with a maintenance worker's cart as it was pushed out of a darkened elevator.  This risk source was related to her employment, in that Employer's office was located on the fourth floor of a commercial office building where maintenance workers used the elevator to transport their carts and employees used the elevator to access and to leave the floor.  Jensen-Price was using this elevator solely because, as the Commission found, she was engaged in the process of going from one worksite to another.  Therefore, she was exposed to the risk of colliding with the maintenance worker's cart coming out of this darkened elevator *because* of her employment. *See Young v. Boone Elec. Coop.*, 462 S.W.3d 783, 789 (Mo. App. 2015).

There was no evidence that Jensen-Price had any exposure, let alone equal exposure, to the hazard of colliding with a maintenance worker's cart as it was being pushed off of this darkened elevator in her normal nonemployment life. *See Wright*, 484 S.W.3d at 64 (holding that the employee, who was injured when a chair owned by his employer collapsed as he was sitting on it at work, was not equally exposed to this risk source outside of work because the risk source was this particular chair); and *Young*, 462 S.W.3d at 790 (holding that the employee's "injury arose out of his employment because there is nothing in the record to support a conclusion that he was equally exposed to the hazard of slipping on frozen dirt clods in that particular work site in his nonemployment life").

The additional testimony from Jensen-Price that the Commission believed it needed to hear to draw this conclusion was not necessary. Testimony as to how pulling the rolling the briefcase may have affected her balance after the cart collided with her leg was immaterial, as she did not need to explain *why* she fell as a result of the collision. *See Gleason*, 455 S.W.3d at 502. Likewise, the frequency with which this elevator was dark and the frequency with which Jensen-Price encountered maintenance workers with their carts during normal business hours was also immaterial. Regardless of how often Jensen-Price was exposed, *while she was engaged in a work activity*, to the risk source of colliding with a maintenance worker's cart as it was being pushed off of this darkened elevator, it was still a risk source to which she was not equally exposed in her normal nonemployment life.

11

Employer argues that the risk source of Jensen-Price's injury was merely walking and, therefore, this case is analogous to claims for compensation that our Supreme Court denied in *Miller* and *Johme*. We rejected this construction of *Miller* and *Johme* recently in *Lincoln University*, 485 S.W.3d 811. The employee in *Lincoln University* was injured when, as she walked to her car in the parking lot, she stepped off a steep edge of the sidewalk and turned and broke her ankle. *Id*. at 813. Like Employer in this case, the employer in *Lincoln University* argued that the risk source of the employee's injury was simply walking and that, pursuant to *Miller* and *Johme*, she should be denied compensation. *Id*. at 815.

In finding this construction erroneous, we explained that "[n]either *Miller* nor *Johme* found that the employee's injuries were not compensable because the risk source was walking." *Id*. at 818. "Rather, each found that the risk source -- walking *on an even road surface* in *Miller*, and turning, twisting an ankle, and *falling off a shoe* in *Johme* -- were risk sources the employee would have been equally exposed to outside of the workplace in normal nonemployment life." *Id*. (citing *Miller*, 387 S.W.3d at 674; and *Johme*, 366 S.W.3d at 511). Applying *Miller* and *Johme* to the facts of *Lincoln University*, we reasoned that, while the employee was walking when she was injured, walking was not the risk source of her injury; instead, the risk source of her injury was stepping off the steep edge of a sidewalk. *Id*. The employee was not injured *because* she was walking but "because while walking, she encountered a steep drop off on the sidewalk -- a risk

12

source that she would not have been equally exposed to outside of the workplace in normal nonemployment life." *Id*.

Applying *Lincoln University*'s reasoning to this case, although Jensen-Price was walking when she was injured, walking was not the risk source of her injury. The risk source of her injury was colliding with a maintenance worker's cart as it was pushed out of the darkened elevator. Jensen-Price was not injured because she was walking but because while walking, she collided with a maintenance worker's cart as it was pushed out of the darkened elevator -- a risk source that she would not have been equally exposed to outside of the workplace in her normal nonemployment life. Therefore, Jensen-Price's injury arose out of and in the course of her employment and was compensable. The Commission erred in concluding otherwise.

Employer argues that we should affirm this case on the same basis that the ALJ denied Jensen-Price's claim, which was that she was going from work at the time of the accident and her injury occurred in an area of the office building that was under the building owner's -- not Employer's -- control. To support this argument, Employer cites Section 287.020.5, which abrogates the extension of premises doctrine "to the extent that it extends liability for accidents that occur on property not owned or controlled by the employer even if the accident occurs on customary, approved, permitted, usual or accepted routes used by the employee to get to and from their place of employment."

The Commission specifically rejected the ALJ's factual determination that Jensen-Price was going from work at the time of the accident, however. Instead, the Commission found that Jensen-Price was engaged in a work activity at the time of her accident. We are bound by the Commission's factual determinations. *Hornbeck*, 370 S.W.3d at 629. As noted in *Duever v. All Outdoors, Inc.*, Section 287.020.5 is not applicable in cases where the employee is "not on the way to work or on the way home from work" but is "on the job" at the time of the accident. 371 S.W.3d 863, 868 (Mo. App. 2012). Section 287.020.5 has no bearing on the compensability of Jensen-Price's accident. *See id*.

### CONCLUSION

We reverse and remand this case to the Commission for further proceedings consistent with this opinion.[2]

_____
**LISA WHITE HARDWICK, JUDGE**

**ALL CONCUR.**

---

[2] The Second Injury Fund asks us to find that Jensen-Price's disability was the result of her 2010 work injury alone and in isolation. Neither the ALJ's findings nor the Commission's decision addressed whether Jensen-Price was permanently disabled by a combination of her past disabilities and the primary work injury so as to trigger the Second Injury Fund's liability. That issue is to be determined by the Commission on remand. *See Gleason*, 455 S.W.3d at 503 n.7.

14