

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| DONTARIUS J. MARKS, | ) | |
| | ) | |
| Appellant, | ) | WD82956 |
| | ) | |
| v. | ) | OPINION FILED: April 14, 2020 |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

Before Division Two: Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

Dontarius Marks ("Marks") appeals from the Labor and Industrial Relations

Commission's ("Commission") final award denying his claim for workers' compensation

benefits. Marks asserts the Commission's denial of benefits was erroneous because: (1) as

a matter of law, Marks's injury arose out of and in the course of employment; (2) as a matter

of law, Marks was not equally exposed to the risk source of stairs in his non-employment

life; and (3) there was not sufficient, competent and substantial evidence to support the

finding that Marks was only exposed to the risk source of walking down the stairs at the time of the injury. Finding no error, we affirm.

## Factual and Procedural Background

In November 2017, Marks worked for the Missouri Department of Corrections ("Employer") as a Correction Officer I. He was assigned to work at the Fulton Reception and Diagnostic Center. Marks undertook security training that included coursework and defensive tactics training. Marks's job required that he complete security checks once or twice each hour during his shifts. These security checks required him to ascend and descend several staircases.

On November 9, 2017, Marks was descending a staircase while conducting a security check when he mis-stepped and felt his right knee twist. He immediately felt pain in his knee. Marks reported the injury.

On November 13, 2017, Marks completed a questionnaire from the employer about the incident. On the questionnaire, Marks answered that at the time of the injury he was not responding to a code or other emergency situation, he was not distracted, he was not carrying anything at the time, there were no offenders in the area, there was nothing on the floor, and there was nothing wrong with the steps. When asked what may have caused the injury, Marks answered that he "[s]tepped of[f] the step wrong."

Marks filed a timely claim with the Division of Workers' Compensation that sought a medical evaluation of his injured knee, payment of past medical expenses incurred, and temporary total disability ("TTD") payments. During his hearing before an Administrative Law Judge ("ALJ"), Marks testified that he was injured when he became distracted and

2

looked back to check on a coworker who was helping Marks conduct the security check. Marks testified that he was concerned about his coworker's safety and the risk posed by offenders who might have remained in their cells after being released for a meal. Marks confirmed during his testimony that he was required to ascend and descend stairs at the apartment complex where he lived.

The ALJ denied Marks's workers' compensation claim ("ALJ Award"). The ALJ found that "On November 9, 2017, [Marks] was performing a security check. As he descended the stairs, [Marks] mis-stepped off the stair and felt his right knee twist and felt immediate pain in his knee." The ALJ found that "[Marks] is exposed to stairs outside of his employment and in normal non-employment life." Regarding the credibility of Marks's testimony, the ALJ found:

> [Marks] testified at length about his security training, about working with an officer he had not worked with before, about looking out for her safety during the security check and about looking back for her when he missed the step. I do not find that claimant's testimony on these matters to be credible or that they had any impact on the accident. [Marks's] testimony is inconsistent with his statements provided almost immediately after the accident. I find that his testimony is a non-credible, post-accident attempt to avoid the requirements of section 287.020.3(2)(b).

The ALJ found that "the accident occurred when [Marks] missed a step and did not arise out of and in the course of employment."

3

Marks appealed the award to the Commission. The Commission affirmed and adopted the ALJ Award into its final award denying Marks compensation ("Final Award").[1] Marks filed this timely appeal.

## Standard of Review

In reviewing the Commission's Final Award, our standard of review is controlled by section 287.495.1,[2] which provides as relevant:

> The court on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award;
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Because the Commission affirmed and adopted the findings and conclusions of the ALJ Award, we review the ALJ's findings and conclusions for error. *Jefferson City Country Club v. Pace*, 500 S.W.3d 305, 311 (Mo. App. W.D. 2016).

"We review the whole record to determine whether there is sufficient and substantial evidence to support the award or if the award is contrary to the overwhelming weight of evidence." *Hayes v. Ginger C, LLC*, 582 S.W.3d 140, 146 (Mo. App. W.D. 2019). "This court defers to the Commission's factual findings and recognizes that it is the Commission's

---

[1] A dissenting Commissioner filed a separate opinion reasoning that the ALJ's credibility determination lacked sufficient competent and substantial evidence.

[2] All statutory references are to RSMo 2016 as applicable on the date of Marks' injury, unless otherwise indicated.

4

function to determine credibility of witnesses." *Riley v. City of Liberty*, 404 S.W.3d 434, 439 (Mo. App. W.D. 2013) (citing *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)). "This Court may not substitute its judgment on the evidence, and when the evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Id.* "When the relevant facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law requiring *de novo* review." *Miller v. Missouri Highway and Transp. Com'n*, 287 S.W.3d 671, 672 (Mo. banc 2009).

## Analysis

Marks raises three points on appeal. Marks argues in Point One that the Commission erred in finding that Marks did not sustain an injury arising out of and in the course of employment because the Commission failed to consider that Marks was in an unsafe environment when his injury occurred. Marks argues in Point Two that the Commission erred because the Commission did not strictly construe section 287.020.3(2)(b)'s requirement relating to the comparison of risk in Marks's nonemployment life. Marks argues in Point Three that the Commission's finding that Marks was only exposed to the risk source of walking down the stairs at the time of injury is not supported by the sufficient competent and substantial evidence.

Resolution of Marks's Points One and Two on appeal depend first on whether there was sufficient competent and substantial evidence to support the Commission's conclusion that Marks was only exposed to the risk source of walking down the stairs at the time of

5

his injury.  Marks challenges this conclusion in Point Three.  Because an analysis of all points benefits from an overview of the applicable law relating to section 287.020.3(2)(b), we begin with a discussion of general principles, then proceed to an analysis of Point Three. We then address Points One and Two, collectively.

## Section 287.020(2)(b)

Under the Missouri Workers' Compensation Law ("Act") in effect at the time of Marks' injury, section 287.120.1 provides that an employer "shall be liable, irrespective of negligence, to furnish compensation under the provisions of [the Act] for personal injury . . . of the employee by accident . . . arising out of and in the course of the employee's employment."  For an injury to be compensable it must arise "out of and in the course of . . . employment pursuant to section 287.020.3(2)."  *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 509 (Mo. banc 2012).  Section 287.020.3(2) provides that:

> An injury shall be deemed to arise out of and in the course of the employment only if:
>
> . . .
>
> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.[3]

An injury is deemed to "arise out of and in the course of employment" under section 287.020.3(2)(b) when a claimant shows "a causal connection between the injury at issue and the employee's work activity."  *Johme*, 366 S.W.3d at 510.  The Supreme Court has

---

[3]In addition, Section 287.020.3(2)(a) requires that "it is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury."  Because no party contests that stepping off the stairs was the prevailing factor in causing Marks's injury, we need not address this requirement.

6

discussed the nature of this "causal connection" in *Miller v. Missouri Highway and Transp. Com'n*, 287 S.W.3d 671 (Mo. banc 2009) and *Johme*, 366 S.W.3d at 504.

In *Miller*, the Commission found that an employee injured his knee while "walking briskly" on a road toward a work truck to retrieve work materials. *Miller*, 287 S.W.3d at 672. Nothing about the employee's gait or walking pace was different than how he normally walked in his nonemployment life. *Id.* Nor did his work clothes or the road surface cause any slip, strain, or unusual movement. *Id.* The Court held that the employee's injury was not compensable because there was no causal connection between the employee's work and the injury "other than the fact of [the injury's] occurrence while at work." *Id.* at 674. The Court reasoned that while the injury "occurred at work, in the course of employment . . . it did not arise out of employment." *Id.* at 673. The Court held that "an injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved -- here, walking -- is one to which the worker would have been exposed equally in normal nonemployment life." *Id.* at 674.

In *Johme*, the Court held that an employee's injury was not compensable when the employee slipped off her thick-heeled sandal, twisting her ankle, while making coffee in the employee breakroom. *Johme*, 366 S.W.3d at 511. In discussing *Miller*, the Court again re-emphasized that "[i]t is not enough that an employee's injury occurs while doing something related to or incident to the employee's work; rather, the employee's injury is only compensable if it is shown to have resulted from a hazard or risk to which the employee would not be equally exposed in 'normal nonemployment life.'" *Johme*, 366

7

S.W.3d at 511. The Court concluded that "no evidence showed that [the employee] was not equally exposed to the cause of her injury -- turning, twisting her ankle, or falling off her shoe -- while in her workplace making coffee than she would have been when she was outside of her workplace in her 'normal nonemployment life.'" *Id.* The court specifically noted that it was an "irrelevant distraction" that the employee did not make coffee at home because the employee's injury "was not caused by making coffee." *Id.* at 511 n. 12. Instead, the Court determined that "no evidence was presented to show that [the employee's] 'normal nonemployment life' exposed her to a lesser risk of turning, twisting her ankle, or falling off her shoe as compared to the risk she faced the day she fell in the workplace." *Id.*

In applying the "causal connection" standard of *Miller* and *Johme,* our courts have conducted a "risk source" analysis between an employee's work activities at the time of an injury and the relative risk of injury in the employee's normal nonemployment life. *See Gleason v. SIF*, 455 S.W.3d 494, 499 (Mo. App. W.D. 2015); *Wright v. SIF*, 484 S.W.3d 56, 63 (Mo. App. E.D. 2015); *Dorris v. Stoddard County*, 436 S.W.3d 586, 592-93 (Mo. App. S.D. 2014). This court has applied a two-part test, which "first requires identification of the risk source of a claimant's injury, that is, identification of the *activity that caused the injury*, and then requires a comparison of that risk source or activity to normal nonemployment life." *Gleason*, 455 S.W.3d at 499 (emphasis original); *see also Lincoln University v. Narens*, 485 S.W.3d 811, 817 (Mo. App. W.D. 2016); *ConAgra Foods, Inc. v. Phillips*, 527 S.W.3d 74, 82 (Mo. App. W.D. 2017); *McDowell v. St. Luke's Hospital of*

8

*Kansas City*, 572 S.W.3d 127, 132 (Mo. App. W.D. 2019). Under this framework we turn to the evidentiary issue presented in Point Three.

## Point Three

Marks argues that the Commission's finding that Marks was only exposed to the risk source of walking down the stairs is not supported by sufficient competent and substantial evidence. Marks specifically challenges the Commission's finding that his testimony was not credible because it was inconsistent with his answers to a questionnaire he completed shortly after his injury. Marks argues that because he testified consistently before the ALJ that he was distracted by a coworker when descending the stairs, and because no contradictory testimony was presented by Employer, the Commission was bound to believe his testimony. We disagree.

Marks' argument fails to account for Employer's cross-examination of Marks. "While a party can contest evidence by putting forth evidence to the contrary, a party also can contest evidence by cross-examination, or by pointing out internal inconsistencies in the evidence." *White v. Dir. of Rev.*, 321 S.W.3d 298, 308 (Mo. banc 2010) (internal citations omitted). "[A] legitimate factual dispute or credibility determination is presented by . . . cross-examination of a witness . . . which raises a legitimate credibility dilemma with respect to a material aspect of the . . . case." *Id.*

Here, Marks was cross-examined regarding his descent of the stairs and the answers he provided on the questionnaire completed four days after the injury. Employers' cross-examination emphasized that Marks's questionnaire answers did not mention being distracted by a coworker as a cause of the injury; expressly denied being distracted at the

9

time of the injury; did not mention that he was turning to look backwards out of concern for his or a co-worker's safety; and expressly stated he simply missed a step. Employer's cross-examination revealed "two conflicting narratives." *Thompson v. Treasurer of Missouri,* 545 S.W.3d 890, 894 (Mo. App. E.D. 2018). "When evidence before the Commission would warrant either of two opposed findings, we are 'bound by the [Commission's] determination, and it is irrelevant that there is supportive evidence for the contrary finding.'" *Id.* (citing *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)) (alterations in original). Sufficient competent and substantial evidence supports the Commission's finding that Marks's testimony was not credible because the Employer's cross-examination suggested an inconsistency in Marks's testimonial account of the injury.[4]

Marks's third point also takes issue with whether the questionnaire answers were, in fact, inconsistent with his testimony before the ALJ. Marks quarrels with whether an

---

[4]Marks relies on *Corp v. Joplin Cement Co.*, 337 S.W.2d 252, 258 (Mo. banc 1960) and *Abt v. Mississippi Lime Co.*, 388 S.W.3d 571 (Mo. App. E.D. 2012) for the general principle that "where the record reveals no conflict in the evidence or impeachment of any witness, the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses." *Corp*, 337 S.W.2d at 258.

Unlike in *Corp*, where the court reviewed an award without any credibility determination, here the Commission included a credibility determination. Additionally, Marks's testimony was inconsistent with the answers provided on the questionnaire.

Unlike *Abt*, where the Commission failed to specify "what evidence it found persuasive," *Abt*, 388 S.W.3d at 583, here, the Commission identified specifically what evidence -- Marks's testimony about being distracted -- it found unpersuasive.

Marks also relies on *Annayeva v. SAB of TSD of City of St. Louis*, No. ED107558, --- S.W.3d ---, 2019 WL 3417286, (Mo. App. E.D. July 30, 2019). *Annayeva* reversed the Commission on the basis that its award was not supported by sufficient competent and substantial evidence when the Commission found a claimant's testimony not credible. *Id.* at *7. *Annayeva* has no precedential value as the Supreme Court of Missouri accepted transfer of the case in November 2019. The Supreme Court issued its decision March 17, 2020 holding that the Commission's award was supported by competent and substantial evidence. In doing so the Court noted, that "only factual findings that are necessary to make an award for the employee must be supported by competent and substantial evidence on the whole record," however "[c]redibility determinations, on the other hand, ***do not*** and -- once expressed by the Commission -- are binding on this Court." *Annayeva v. SAB of TSD of City of St. Louis*, No. SC98122, --- S.W.3d ---, slip opinion *7 n.8 (Mo. banc March 17, 2020) (emphasis added).

10

employee can be reasonably expected to anticipate the need to provide, on an employer questionnaire, the level of detail required to later establish that a workplace injury resulted from a risk source to which the employee is not equally exposed in nonemployment life. Whether or not that is true, we cannot fault the Commission's conclusion that Marks's questionnaire response that he was not distracted at the time of his injury was inconsistent with his hearing testimony which attributed his mis-step on the stairs to being distracted by concerns for his or his co-worker's safety. Moreover, Marks's argument unfairly presumes that the unfavorable credibility determination relied solely on the inconsistencies between Marks's hearing testimony and his questionnaire answers. The ALJ (and ultimately the Commission) found that Marks's testimony about his security training, and about looking backwards out of concern for his and a co-worker's safety was not credible, and was a post-accident attempt to bring his injury within the ambit of section 287.020.3(2)(b). Though inconsistencies between Marks's hearing testimony and his questionnaire answers were noted in the ALJ Award as a reason for the unfavorable credibility determination, the ALJ's Award cannot be fairly read to limit the credibility determination to only that factor, particularly as Marks testified, in-person, before the ALJ.

Finally, Marks's third point asserts that the Commission's finding that Marks was conducting a security check when his injury occurred is inherently inconsistent with the Commission's finding that his injury was the result of a "risk source" to which he was equally exposed in his nonemployment life. Marks argues that because the Commission found he was conducting a security check when he was injured, the Commission was

11

required to infer that Marks was subject to a heightened risk while descending the stairs. We disagree.

"It is not enough that an employee's injury occurs while doing something related to or incident to the employee's work; rather, the employee's injury is only compensable if it is shown to have resulted from a hazard or risk to which the employee would not be equally exposed in 'normal nonemployment life.'" *Johme*, 366 S.W.3d at 511. The Commission's finding about *what* Marks was doing at the time of his injury has no bearing on why Marks's was injured, unless evidence connected the two. Here, crucially, the only evidence that could have been relied on by the Commission to conclude that the manner in which Marks was conducting a security check increased the risk of injury in descending stairs was *expressly found not credible*. While it is clear that Marks was injured at work descending stairs during a security check, that does not in and of itself establish that Marks's injury occurred "in the course of" employment. *See Johme*, 366 S.W.3d at 511 (finding that falling off a shoe while making coffee at work did not establish that injury arose out of and in the course of employment); *Miller*, 287 S.W.3d at 673-74 (finding that brisk walking to get from one place to another at work did not establish that injury arose out of and in the course of employment).

The Commission's determination that Marks's injury resulted from a risk source to which he is equally exposed in his nonemployment life was supported by sufficient, competent and substantial evidence. Point Three is denied.

12

## Points One and Two

Marks's first point argues that the Commission erred in applying section 287.020.3(2)(b) because the Commission should have determined that the risk source of his injury was "walking down stairs while conducting the security check for criminal inmates in a correctional housing unit." [Appellant's Br., p. 23]. But as we have already discussed, under our standard of review, Marks failed to offer credible evidence that would support a conclusion that this activity increased the risk of injury beyond the risk Marks was exposed to while descending stairs in his normal nonemployment life. Because there was no credible evidence that Marks's risk of walking down the stairs at the time of his injury was greater than in his normal nonemployment life, his first point fails.[5]

Marks's second point argues that the Commission erred in finding that Marks was equally exposed to the risk source of descending stairs in his normal nonemployment life.

---

[5]Marks relies on a line of cases relating to employment injuries that occurred within the context of an "unsafe environment." However, Marks's reliance ignores our standard of review, which binds us, in the absence of overwhelming evidence to the contrary, to the factual findings of the Commission. *See Young v. Boone Electric Cooperative*, 462 S.W.3d 783, 789 (Mo. App. W.D. 2015) (Commission's award of benefits supported by evidence that claimant was not equally exposed to the risk of slipping on frozen dirt clods in his normal nonemployment life); *Pope v. Gateway to West Harley Davidson*, 404 S.W.3d 315, 320 (Mo. App. E.D. 2012) (Commission's award of benefits supported by sufficient evidence that claimant was not equally exposed to the risk of falling while descending stairs carrying a helmet and wearing work boots because the record did not reflect that the claimant was exposed to that risk in his normal nonemployment life); *Dorris v. Stoddard County*, 436 S.W.3d 586, 592 (Mo. App. S.D. 2014) (Commission's award of benefits supported by sufficient evidence that claimant who was injured while tripping on a crack in the street while performing work duties because the record did not show that the claimant was equally exposed to the hazard in her normal nonemployment life); *McDowell* v. *St. Luke's Hospital of Kansas City*, 572 S.W.3d 127, 134 (Mo. App. W.D. 2019) (Commission's award of benefits was supported by sufficient evidence that the claimant was not equally exposed to the cause of her injury outside of her workplace); *Lincoln University v. Narens*, 485 S.W.3d 811, 822 (Mo. App. W.D. 2016) (Commission's award of benefits supported by the evidence that the claimant's injuries were caused by falling off the edge of a steep sidewalk on a crowded campus and claimant was not exposed this risk in her normal nonemployment life). These "unsafe environment" cases are inapposite. Unlike in all of them where the Commission found that the claimant was exposed to a greater risk of injury at the time of the claimant's injury than in the claimant's nonemployment life -- a finding in each case that was supported by sufficient substantial and competent evidence --, here, there was no ***credible*** evidence established that Marks was at a greater risk of injury while descending stairs at work than during his nonemployment life.

13

Marks asserts that provisions of the Act must be strictly construed under section 287.800.[6] Applying this principle, he argues that the Commission improperly compared the risk source of his injury -- walking down stairs -- to the risk of injury he faced in his normal nonemployment life because "the quality, quantity, and nature of the stairs as well as the observance required of [Marks] in traversing those stairs was not equal" to the risk he faced descending stairs in his normal nonemployment life. [Appellant's Br., p. 34]. Marks's second point fails for the same reason that his other two points fail. Even if we assume the strict interpretation proposed by Marks, there is no credible evidence upon which this court may rely to conclude that he faced an increased risk of injury descending stairs while at work.

Points One and Two are denied.

## Conclusion

The Commission's Award is affirmed.

_____
Cynthia L. Martin, Judge

All concur

---

[6]Section 287.800.1 provides that this court "shall construe the provisions of this chapter strictly."

14