

# IN THE MISSOURI COURT OF APPEALS
# EASTERN DISTRICT

## DIVISION TWO

| | |
|---|---|
| ANTHONY EASLEY, | ) |
| | ) No. ED113451 |
| Appellant, | ) |
| | ) Appeal from the Labor and Industrial |
| v. | ) Relations Commission |
| | ) Cause No. 20-061003 |
| TREASURER OF MISSOURI AS | ) |
| CUSTODIAN OF THE SECOND | ) |
| INJURY FUND, | ) |
| | ) Filed: September 23, 2025 |
| Respondent. | ) |

## Introduction

Anthony Easley ("Claimant") appeals the Labor and Industrial Relations

Commission's ("the Commission") decision affirming the administrative law judge's

("the ALJ") award finding the Second Injury Fund ("the Fund") not liable for permanent

and total disability ("PTD") benefits. Claimant raises two points on appeal. In Point I,

Claimant argues the Commission erred in finding he was permanently and totally

disabled from his primary injury alone because the expert testimony established he was

permanently and totally disabled from a combination of his primary injury and

preexisting blindness. In Point II, Claimant argues the ALJ erred in finding he did not

establish a qualifying preexisting disability because his blindness was medically

documented, equaled at least fifty weeks of permanent partial disability ("PPD"), and his blindness directly aggravated and accelerated his primary injury.

This Court holds the Commission's decision Claimant was rendered permanently and totally disabled from his primary injury alone and the Fund was not liable for PTD benefits is supported by substantial and competent evidence on the whole record. Point I is denied. Because Point I is dispositive, this Court need not reach Point II. The Commission's decision is affirmed.

**Factual and Procedural History**

In 1988, Claimant sustained a gunshot wound to his face, which severed his optic nerve, resulting in total blindness. Claimant underwent rehabilitation which enabled him to obtain employment with The Lighthouse for the Blind, Inc. d/b/a LHB Industries ("Employer"), an organization that employs individuals with visual impairments. Beginning in February 1997, Claimant worked on an assembly line packing, sealing, and palletizing first aid kits.

On September 15, 2020, Claimant was working on the assembly line when he went to use the restroom. Claimant stopped on the track on the floor's main aisle when he heard a beeping sound indicating a forklift was approaching. Claimant waited until the forklift passed and he could no longer hear the beeping before proceeding. Claimant crossed the next track and experienced sudden, heavy, constant pressure on his left foot, which he initially believed was a pallet jack. When Claimant reached down to investigate, he discovered a forklift, which was not beeping, sitting on top of his foot.

Claimant yelled for the forklift to move. Claimant was in so much pain he had to lay on the floor until an ambulance arrived to transport him to the hospital.

Claimant was diagnosed with a left foot crush injury with a closed non-displaced fracture of the proximal phalanx of the left great toe. Claimant received treatment from Dr. Elizabeth Klein, an orthopedist, through January 2021. Dr. Klein recommended Claimant return to light duty work and use crutches when walking long distances.

When Claimant's healing did not progress as expected, he received additional treatment from Dr. Brian Meek, who found Claimant also had a crush injury to the deep peroneal nerve, resulting in complex regional pain syndrome. Dr. Meek ordered physical therapy, lumbar sympathetic blocks, and a deep peroneal nerve injection. Dr. Meek also recommended Claimant return to light duty or sedentary work with his left foot elevated and occasionally walking 100 feet. During an office visit, Dr. Meek's colleague detected left ankle instability, recommended an ankle brace for daily use, and limited Claimant to four-hour workdays. Dr. Meek found Claimant achieved maximum medical improvement ("MMI"), but he did not assign a disability rating.

Claimant returned to work in May 2021, performing light duty work for three days a week, four hours a day, with his left foot elevated until he was laid off in October 2021. Claimant returned to work in February 2022, and worked in an accommodated position until February 2023.

In addition to his physical injuries, Claimant suffered from depression and anxiety. Dr. Adam Sky evaluated Claimant at Claimant's request and diagnosed him with post-traumatic stress disorder and major depressive disorder with anxious mood. Dr. Sky

found Claimant's primary foot injury was the prevailing factor in his psychiatric diagnoses and assigned a rating of 30% PPD body as a whole for psychiatric disability. Dr. Sky also issued several work restrictions, finding Claimant would have difficulty: (1) performing any tasks involving persistence, pace, or accuracy; (2) interacting with members of the general public, supervisors, and coworkers in the open labor market; and (3) adjusting to changes in the workplace, both major and minor. Dr. Sky was particularly concerned about Claimant's ability to follow safety guidelines and protocols foundational in an industrial work environment. Despite finding Claimant at MMI, Dr. Sky recommended he receive ongoing psychotherapy. Dr. Sky was not asked to assess or render an opinion on if or how Claimant's blindness affected his ability to work.

In March 2021, Employer sent Claimant to Dr. Thomas Lantsberger for an independent psychological evaluation. Dr. Lantsberger also diagnosed Claimant with major depressive disorder, which was recurrent and moderately severe. Dr. Lantsberger found the primary injury was the prevailing factor in Claimant's psychiatric complaints and need for treatment. Dr. Lantsberger believed it was in Claimant's best interest to return to work as soon as possible but he should be allowed to work in an area where he would not be exposed to forklift sounds. Dr. Lantsberger did not believe Claimant was at MMI and stated he required additional treatment. Claimant treated with Dr. Lantsberger through January 2022, at which time he was found to be at MMI and released to return to work without restrictions. He assigned a rating of 20% PPD body as a whole for psychiatric disability.

Claimant commissioned an independent medical evaluation by Dr. David Volarich, who diagnosed him with a left foot crush injury, fracture of the proximal phalanx of the great toe into the interphalangeal joint, and chronic regional pain syndrome. He assigned disability ratings of 40% PPD of the left great toe and 45% PPD of the lower left extremity. Dr. Volarich found Claimant was at MMI, but would require ongoing pain management for his regional pain syndrome. Dr. Volarich issued several work restrictions: (1) avoid stooping, squatting, crawling, kneeling, pivoting, climbing, and all impact maneuvers and continue working at the sedentary level; (2) be cautious in navigating uneven terrain, slopes, steps, and ladders, especially when handling weight, but he could handle weight to tolerance; (3) bear weight to tolerance including standing or walking; and (4) pursue appropriate strengthening, stretching, and range of motion exercise programs in addition to non-impact aerobic conditioning.

Claimant also commissioned an evaluation by Benjamin Hughes, a vocational expert. Hughes reviewed all of the medical records, reports, restrictions, and evaluated Claimant in person. He opined that when observing every set of restrictions provided, Claimant was unemployable based on his primary injury "alongside his visual impairment." Hughes found Claimant's "blindness clearly acted as a hindrance or obstacle to [his] employment long before 2020. However, from the perspective of Dr. Sky, if found to be unemployable, this appears to be based on the last injury alone."

After reviewing Hughes' evaluation, Dr. Volarich spoke with Claimant again and asked him how his left foot injury was aggravated or accelerated by his preexisting blindness. Claimant indicated his blindness made it difficult for him to maneuver areas

5

where items were frequently moved, necessitating he rely on other senses to avoid injury. Dr. Volarich issued a second report stating he "concurred with [Hughes'] vocation assessment … [Claimant] was permanently and totally disabled as a result of the combination of his work injury … and his preexisting blindness."

Claimant sought workers' compensation benefits from Employer and the Fund. The parties stipulated Claimant's left foot and psychiatric injuries arose out of his employment. Claimant settled his claim against Employer for 50% PPD for his left ankle and 25% PPD body as a whole for psychiatric disability. The ALJ held a hearing solely to determine Fund liability for PTD benefits.

Claimant testified at the hearing and offered into evidence medical records, Employer's stipulated settlement, and expert reports and depositions, including from Dr. Volarich, Dr. Sky, and Hughes. Claimant testified in detail how his left foot injury continued to affect him physically and psychologically. When the Fund's attorney asked Claimant, "Just considering the pain with your left foot and the problems with your left foot and the sleep problems from that and the mental problems from that, are there any jobs you think you could do," Claimant answered, "No, sir," and explained he had no physical problems performing work before the accident. Dr. Volarich testified he disagreed Claimant was permanently and totally disabled based on his primary injury alone because he thought "there would still be something he could do, if he could see." He reiterated he agreed with Hughes' assessment Claimant was permanently and totally disabled because of the combination of his primary injury and preexisting blindness. Dr. Sky did not address Claimant's ability to work or the impact his blindness would

6

have his ability to work. Hughes testified repeatedly he believed Claimant was permanently and totally disabled due to a combination of his primary injury and preexisting blindness based on different work restrictions. On cross-examination, Hughes was asked to consider the combined limitations and restrictions Claimant and Dr. Volarich described resulting from the work injury to his foot and ankle with the psychiatric limitations Dr. Sky described resulting from the work injury. Hughes admitted, "I think as soon as you mention Dr. Sky's restrictions, no, the guy cannot work."

The ALJ denied Claimant PTD benefits from the Fund. The ALJ first analyzed whether Claimant had a qualifying preexisting disability. The ALJ found Claimant did not meet his burden because—despite his blindness being medically documented and directly and significantly aggravating or accelerating the primary injury—he did not meet his burden of production to establish a disability of at least 50 weeks when he did not offer any doctor rating or medical records to support this finding. The ALJ then analyzed whether Claimant was permanently and totally disabled as a result of the primary injury alone. The ALJ relied on Hughes' testimony that Claimant's physical injuries and Dr. Volarich's restrictions, coupled with his mental injuries and Dr. Sky's restrictions resulting from the last accident, were sufficient to render Claimant unemployable in the open labor market. Accordingly, Claimant was permanently and totally disabled from the primary injury alone, and the Fund was not liable for PTD benefits. Claimant filed an application for review.

The Commission affirmed the ALJ's award. The Commission issued a decision explaining the proper order of analysis to determine Fund liability: the ALJ must *first* determine the degree or percentage of disability resulting from the primary injury alone *before* determining the degree or percentage of the employee's preexisting disabilities. The Commission stated an employee's preexisting disabilities are irrelevant until the employer's liability for the primary injury is determined. Because the ALJ found Claimant was permanently and totally disabled due to his primary injury alone, the Commission found the issue of whether he had a qualifying preexisting disability was moot and struck the ALJ's findings regarding Claimant's blindness being a qualifying preexisting disability. One commissioner dissented, finding Claimant was permanently and totally disabled based on a combination of his preexisting blindness and the primary injury and faulted the ALJ and the Commission for relying on isolated portions of Hughes' testimony.

This appeal follows.[1]

---

[1] The Fund requests this Court dismiss Claimant's appeal for not complying with Rule 84.04. While Claimant's brief contains deficiencies, "[t]his Court 'may exercise discretion to review a non-compliant appeal [when] the argument in the point relied on is readily ascertainable.'" *Lewis v. State*, 661 S.W.3d 9, 13 (Mo. App. E.D. 2023) (quoting *Michaud Mitigation, Inc. v. Beckett*, 635 S.W.3d 867, 870 (Mo. App. E.D. 2021)). Because this Court prefers to dispose of appeals on their merits and "the briefing deficiencies are not so serious as to impeded appellate review," this Court will review Claimant's points *ex gratia*. *Harris v. Ralls Cnty.*, 588 S.W.3d 579, 595 n.16 (Mo. App. E.D. 2019).

## Standard of Review

"Workers' compensation law is entirely a creature of statute" and must be strictly construed. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014); section 287.800.1.[2] The Commission's decision must be "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. "On appeal, the Commission's factual findings shall be conclusive and binding in the absence of fraud, and no additional evidence shall be heard." *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 565 (Mo. banc 2022); section 287.495.1.

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the [C]ommission acted without or in excess of its powers;
> (2) That the award was procured by fraud;
> (3) That the facts found by the [C]ommission do not support the award;
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1(1)–(4). This Court reviews "questions of law *de novo* but defer[s] to the Commission on issues of fact." *Lewis*, 661 S.W.3d at 11. This Court must defer to the Commission's witness credibility determinations and weight given to conflicting evidence. *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020).

---

[2] All statutory references are to RSMo 2016.

**Discussion**

*Point I: SIF Liability for PTD Benefits*
*Party Positions*

In Point I, Claimant argues the Commission erred in finding he was permanently and totally disabled from his primary injury alone because the expert testimony established he was permanently and totally disabled from a combination of his primary injury and preexisting blindness. The Fund argues the Commission correctly determined Claimant was permanently and totally disabled due to his primary injury alone based upon the credible evidence presented.

*Analysis*

"Whether a claimant is permanently and totally disabled and whether that claimant is entitled to PTD benefits from the Fund are entirely distinct questions." *Klecka*, 644 S.W.3d at 567. "[T]otal disability" is defined as the "inability to return to any employment and not merely inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6. "The test for [PTD] is the worker's ability to compete in the open labor market because it measures the worker's potential for returning to employment." *Harper v. Springfield Rehab & Health Care Ctr./NHC Health*, 687 S.W.3d 613, 620 (Mo. banc 2023) (quoting *Greer v. SYSCO Food Servs.*, 475 S.W.3d 655, 664 (Mo. banc 2015)). "The ability to compete in the open labor market hinges on whether, in the ordinary course of business, any employer would be reasonably expected to hire the individual given his or her present physical condition." *Klecka*, 644 S.W.3d at 567 (quoting *Greer*, 475 S.W.3d at 665). The claimant bears the

10

burden of showing he or she is entitled to PTD benefits. *Eckardt v. Treasurer of Mo.*, 710 S.W.3d 523, 527 (Mo. banc 2025).

"In determining whether the … Fund has any liability, the first finding is the degree of disability from the last injury considered alone." *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45, 57 n.7 (Mo. App. E.D. 2019) (quoting *Forshee v. Landmark Excavating & Equip.*, 165 S.W.3d 533, 537 (Mo. App. E.D. 2005)). "If the last injury in and of itself renders the employee permanently and totally disabled, then the … Fund has no liability and the employer is responsible for the entire amount of compensation." *Id*. Hence, "[u]ntil the degree of disability from the last injury is established, … Fund liability cannot be determined." *Id*. Stated differently, "[f]or purposes of calculating [PTD] benefits, '[a] claimant's preexisting disabilities are irrelevant until [the] employer's liability for the last injury is determined.'" *Id*. at 57 *(quoting Gleason v. Treasurer of State of Mo.-Custodian of Second Injury Fund*, 455 S.W.3d 494, 498 (Mo. App. W.D. 2015)).

Claimant contends his case is akin to *Hazeltine*, in which this Court reversed the Commission's decision finding the Fund was not liable for PTD benefits. *Hazeltine*, 591 S.W.3d at 50. There, the claimant offered her medical records and testimony, along with testimony from three medical experts and a vocational rehabilitation expert to support her claim. The Fund offered no evidence. *Id*. at 52. This Court acknowledged, "Acceptance or rejection of evidence is generally an issue for the Commission to determine." *Id*. at 59. However, when "the record is 'wholly silent concerning the Commission's weighing of credibility' and neither the claimant nor the experts testifying on his or her behalf are

11

contradicted or impeached, the Commission 'may not arbitrarily disregard and ignore competent, substantial, and undisputed evidence.'" *Id*. (quoting *Houston Roadway Express, Inc.*, 133 S.W.3d 173, 179–80 (Mo. App. S.D. 2004)).

Here, unlike *Hazeltine*, the Commission was presented with conflicting testimony and made credibility determinations regarding whether Claimant was rendered permanently and totally disabled from his primary injury alone. The Commission fully recounted Claimant's complaints from the primary injury and concluded, "Claimant's testimony offers compelling evidence of extraordinary disability from the last injury." Claimant's own testimony supports this finding because he agreed he was unable to work due to his left foot injury and psychiatric issues alone and stated he had no physical problems working before the accident. This Court's standard of review mandates we defer to the Commission's credibility determinations. *Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 582 (Mo. banc 2023).

The Commission also noted the medical experts "either did not address Claimant's ability to work or deferred to a vocational expert because the question was beyond their respective expertise." The Commission then expressly found Hughes' testimony that Claimant's psychiatric injuries and Dr. Sky's restrictions related to those injuries combined with his physical injuries and limitations from the last accident were enough to render him unemployable in the open labor market. This evidence supports a finding he was permanently and totally disabled based on the primary injury alone. Claimant—and the dissenting commissioner's opinion he urges this Court to follow—fault the Commission for relying on this isolated portion of Hughes' testimony. While we

acknowledge there is other evidence from Dr. Volarich and Hughes which points to Fund liability, this Court is constrained by its standard of review and has no choice but to reject this argument because the Commission "is free to believe some, all or none of any witness's testimony." *Thomas v. Collins & Hermann, Inc.*, 710 S.W.3d 73, 84 (Mo. App. E.D. 2025) (quoting *March v. Treasurer of Mo.*, 649 S.W.3d 293, 301 (Mo. banc 2022)).

Claimant and Hughes both testified his primary left foot injury rendered him permanently and totally disabled. Thus, based on this Court's standard of review, we hold the Commission's decision Claimant was rendered permanently and totally disabled from his primary injury alone and the Fund was not liable for PTD benefits was supported by substantial and competent evidence on the whole record.

Point I is denied. Because Point I is dispositive, this Court need not reach Point II.[3]

**Conclusion**

The Commission's decision is affirmed.

_____
PHILIP M. HESS, JUDGE

Michael S. Wright, P.J. and
Virginia W. Lay, J. concur.

---

[3] Even if Point I were not dispositive, this Court could not review Point II challenging the ALJ's findings regarding Claimant's preexisting disability. Section 287.495.1 authorizes appellate review only of the Commission's "final awards." *Jackson v. Stahl Specialty Co.*, 310 S.W.3d 707, 710 (Mo. App. W.D. 2010). In exercising this authority, this Court reviews "the findings of the Commission, not those of the ALJ." *Helmig v. Springfield R-12 Sch. Dist.*, 688 S.W.3d 315, 321 (Mo. App. S.D. 2024). Accordingly, this Court does not have the appellate authority to review Point II challenging the ALJ's findings.

13