

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| JERRY THOMAS, | ) | No. ED112795 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and Industrial |
| | ) | Relations Commission |
| vs. | ) | |
| | ) | |
| COLLINS & HERMANN, INC., AND | ) | |
| STATE OF MISSOURI, SECOND INJURY | ) | |
| FUND, | ) | |
| | ) | |
| Respondents. | ) | Filed: March 18, 2025 |

### Introduction

Jerry Thomas ("Claimant") appeals the Labor and Industrial Relations Commission's ("the Commission") decision reversing the administrative law judge's ("the ALJ") award of permanent and total disability ("PTD") benefits against the Second Injury Fund ("the Fund"). Claimant raises three points on appeal. In Point I, Claimant argues the Commission erred in finding his prior right knee disability was not a direct result of a prior compensable injury as defined in section 287.020.[1] In Point II, Claimant argues the Commission erred in denying him PTD benefits when it found his prior knee disabilities did not reach the 50-week threshold to qualify under section 287.220.3(2)(a)a. In Point III, Claimant argues the Commission's decision denying him PTD benefits left him without a remedy.

---

[1] All statutory references are to RSMo 2016.

This Court holds Claimant did not meet his burden of demonstrating his right knee disability was a compensable injury as defined in section 287.020. Point I is denied. Because Claimant's experts improperly incorporated his non-qualifying preexisting right knee disability into their PTD opinions, it is immaterial whether his preexisting disabilities met the 50-week threshold to qualify for Fund benefits. Point II is denied. Because Claimant did not raise to the ALJ or the Commission the legal assertion he would be left without a remedy if Fund liability were denied despite being permanently and totally disabled, his claim is not preserved for appellate review. Point III is denied. The Commission's decision is affirmed.

**Factual and Procedural History**

Claimant worked as a laborer his entire life. In 1993, Claimant sustained a right knee injury in Des Moines, Iowa, when he slipped on ice while at work at Iowa Power & Light. Claimant reported the injury to his employer, received medical treatment, including surgery, and was paid for his time off. Claimant returned to work after eight weeks with no restrictions. Claimant did not seek a workers' compensation settlement with his employer for this injury.

In 1994, Claimant injured his left knee while working in Missouri. Claimant reported the injury to his employer, received medical treatment, had surgery to repair a torn meniscus, and was paid for his time off. Claimant returned to work after eight weeks with no restrictions. Claimant sought workers' compensation for this injury. Claimant, his employer, and the Fund entered into a "Stipulation for Compromise Settlement" ("settlement"). The parties agreed Claimant's left knee injury resulted in 25% permanent partial disability ("PPD") payable by his employer. The settlement stated the Fund was liable for the preexisting disability to his right knee at 25% PPD with a 15% loading factor.

2

Claimant continued to work as a union laborer for the next twenty years without work restrictions. He experienced increasing bilateral knee complaints, but he "pushed through" even though work was more difficult due to these injuries. Claimant explained his knees "slowed [him] down," he took medication daily, he received cortisone shots, and sometimes he wore knee braces. Claimant's treating physicians diagnosed him with general osteoarthrosis and severe crepitus. They opined he needed total knee replacements at some point but told him surgery should be delayed given his relatively young age.

In 2015, Claimant was performing heavy construction work for Collins & Hermann, Inc. ("Employer"). On November 25, 2015, Claimant and his coworkers were placing a tarp over a transformer when a coworker snapped the tarp, which tore Claimant's left rotator cuff. Dr. R.H., an orthopedic surgeon, repaired the tear. Dr. R.H. released Claimant from treatment in May 2016, finding him at maximum medical improvement ("MMI"), and stated he could return to work without restrictions. Claimant returned to work but was placed on light duty. Claimant was terminated from his employment in July 2016, and has not worked since then.

Because of ongoing shoulder complaints, Claimant sought another opinion from a different authorized treating doctor. A second orthopedic surgeon, Dr. W.F., conducted an independent medical examination in March 2017. Dr. W.F. recommended physical therapy and work hardening, which Claimant completed. Dr. W.F. released Claimant from treatment in June 2017, found he had reached MMI, and stated he could return to work without restrictions.

Claimant sought workers' compensation benefits from Employer and the Fund. The parties stipulated Claimant's left shoulder injury was an accidental injury arising out of his employment. The parties asked the ALJ to determine whether Employer was liable for PPD or PTD benefits and the nature and extent of the Fund's liability.

3

Claimant testified at the hearing and offered medical records, depositions, the settlement, and expert reports into evidence. Claimant's medical expert, Dr. D.V., assigned 40% PPD to Claimant's left shoulder and 50% PPD to both knees, which he recognized was larger than the earlier settlement percentages. Dr. D.V. explained Claimant's knees were considerably worse due to arthritis, which dated back to his 1993 and 1994 knee injuries. Dr. D.V. opined if a vocational assessment was unable to identify a job for which Claimant was suited, he would find Claimant permanently and totally disabled because of the primary left shoulder injury "in combination with his preexisting medical conditions," which included both knees. Dr. D.V. imposed work restrictions on Claimant's left shoulder and both knees.

Claimant also presented testimony from Dr. A.S., a board-certified psychiatrist, who diagnosed Claimant with moderate major depressive disorder and generalized anxiety disorder. Dr. A.S. assigned 20% PPD to Claimant's body as a whole due to psychiatric disability as a result of his left shoulder injury. Dr. A.S. opined Claimant "will likely have significant difficulty working in the open labor market," including difficulty with focus, concentration, and performing tasks requiring accuracy, persistence, and pace. Dr. A.S. further found Claimant would have difficulty responding to both minor and major changes in the workplace, which would make it difficult for him to interact with coworkers, supervisors, and the general public. When considering these opinions and restrictions, Claimant's vocational expert, D.G., opined Claimant was permanently and totally disabled as a result of his primary left shoulder injury "in combination with his preexisting disabilities."

Employer offered additional medical records and expert testimony from Dr. R.H., Dr. W.F., and J.B., a vocational counselor. Dr. R.H. assigned 6% PPD to Claimant's left shoulder, found he was at MMI, and could work without restriction. Dr. W.F. assigned 5% PPD to

4

Claimant's left shoulder, found he was at MMI, and could work without restrictions. J.B. opined Claimant was permanently and totally disabled "given the combination of issues" from his primary left shoulder injury and his preexisting conditions.

The Fund offered expert testimony from K.S., a vocational counselor. K.S. testified she considered Dr. R.H.'s and Dr. W.F.'s opinions and lack of restrictions, along with the opinions and restrictions imposed by Drs. D.V. and A.S., when forming her assessment. When considering Drs. R.H.'s and W.F.'s reports, Claimant was fully employable. When considering Dr. D.V.'s left shoulder restrictions, Claimant could perform light work duty. When considering Dr. D.V.'s knee restrictions, Claimant could perform sedentary work. But, when considering Dr. A.S.'s psychiatric restrictions in isolation, K.S. opined they took Claimant "out of all work at all levels" and "out of the labor market."

After reviewing the entire record, the ALJ found Claimant's testimony credible and Dr. D.V., Dr. A.S, D.G., and J.B. persuasive. The ALJ determined Claimant sustained 32.5% PPD of the left shoulder and 12.5% PPD of the body as a whole for psychiatric disabilities, and all were attributed to the primary left shoulder injury for which Employer was liable. The ALJ found both prior knee injuries were work-related and resulted in 45% PPD to each knee. The ALJ recognized Claimant settled his claim for both knees for 25% PPD, but found there was "no question his knees had gotten much worse since that time." The ALJ found Claimant needed total knee replacements due to severe osteoarthritis, which developed as a direct result of his work-related knee injuries. The ALJ then determined these disabilities qualified under the statute because they arose from work injuries and equaled more than 50 weeks. The ALJ concluded Claimant was permanently and totally disabled due to a combination of his primary and preexisting injuries and disabilities, and found the Fund was liable for PTD benefits.

5

The Fund sought Commission review. The Fund alleged the ALJ's award was erroneous on eight grounds, four of which are relevant to this appeal. First, the Fund argued Claimant's right knee injury in Iowa did not qualify for consideration as a preexisting disability because it was not the result of a statutorily-defined compensable injury. Second, the Fund asserted Claimant's prior knee disabilities did not meet the 50-week preexisting disability threshold because Claimant was bound by the settlement valuing each knee at 40 weeks. Third, the Fund argued it was not liable for PTD benefits because Claimant's PTD evidence included his right knee disability, which was a non-qualifying disability. Finally, the Fund contended vocational evidence showed Dr. A.S.'s psychiatric restrictions arising from the primary left shoulder injury alone were sufficient to render Claimant unemployable. Employer answered the Fund's application, denied all allegations, and argued the Fund mischaracterized the vocational evidence and was liable for PTD benefits. Claimant did not file his own application for review, answer the Fund's application, or join in Employer's answer.

The Commission found Claimant's right knee disability was not a statutorily-defined compensable injury, and it was improperly included in his PTD analysis. The Commission determined Claimant did not allege his Iowa employer nor his Iowa accident or injury were covered by Missouri's workers' compensation law. The Commission also found Claimant presented no credible or persuasive evidence his right knee injury was compensable under Iowa's workers' compensation law. When strictly construing Chapter 287, the Commission stated Claimant's Iowa accident did not qualify for Fund liability because this out-of-state, non-covered injury was not compensable under section 287.020. Alternatively, the Commission found even if it could consider out-of-state injuries, Claimant did not present persuasive evidence his injury was a compensable injury as defined under section 287.020 because "the record was devoid of evidence

6

required to establish a causal connection between [Claimant's] right knee injury and his work activity for Iowa Power & Light …." The Commission further found Claimant offered no evidence his right knee injury was the prevailing factor in his resulting medical condition and disability. The Commission reversed the ALJ's finding Claimant injured his right knee in the course of his Iowa employment and found this disability was a non-qualifying preexisting disability. Because Claimant's experts included this non-qualifying disability in forming their PTD opinions, the Commission found he failed to produce credible and persuasive evidence to make a compensable PTD claim against the Fund. The Commission reversed the ALJ's award ordering the Fund to pay PTD benefits. The Commission affirmed the ALJ's PPD benefits award for Claimant's left shoulder and body as a whole disability payable by Employer.

This appeal follows.

### Rule 84.04 Violations

Although the Fund did not move to dismiss Claimant's brief, it points out several Rule 84.04 deficiencies, the most egregious being Claimant's points relied on.[2] "Rule 84.04's requirements are mandatory." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (quoting *Fowler v. Mo. Sheriffs' Ret. Sys.*, 623 S.W.3d 578, 583 (Mo. banc 2021)). "Rule 84.04 is not designed to hamstring appellants with hyper-technicalities." *Parkside Fin. Bank & Tr. v. Allen*, 688 S.W.3d 83, 87 (Mo. App. E.D. 2024). "Compliance with Rule 84.04 is essential to ensure that this Court retains its role as a neutral arbiter and avoids becoming an advocate for any party." *Jones v. Impact Agape Ministries*, 693 S.W.3d 122, 126 (Mo. App. E.D. 2023) (quoting *Hutchison v. Dep't of Soc. Servs., Fam. Support Div.*, 656 S.W.3d 37, 40 (Mo. App. E.D. 2022)).

---

[2] All rule references are to Missouri Rules of Procedure 2024.

7

Rule 84.04(d) requires "a point on appeal shall: (A) identify the challenged ruling or action; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." *Kruse v. Karlen*, 692 S.W.3d 43, 48 (Mo. App. E.D. 2024); *see also* Rule 84.04(d)(2) (governing points relied on when reviewing an administrative agency's decision). "The function of [points relied on] is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Id.* (quoting *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997)).

Claimant's points relied on identify the challenged Commission rulings, but they do not articulate the legal reasons for the claim of reversible error nor explain why the legal reasons support the claim of reversible error. "This Court 'may exercise discretion to review a non-compliant appeal where the argument in the point relied on is readily ascertainable.'" *Lewis v. State*, 661 S.W.3d 9, 13 (Mo. App. E.D. 2023) (quoting *Michaud Mitigation, Inc. v. Beckett*, 635 S.W.3d 867, 870 (Mo. App. E.D. 2021)). Because this Court prefers to dispose of appeals on their merits and "the briefing deficiencies are not so serious as to impeded appellate review," this Court will review Claimant's points *ex gratia*. *Harris v. Ralls Cnty.*, 588 S.W.3d 579, 595 n.16 (Mo. App. E.D. 2019).

## Standard of Review

"Workers' compensation law is entirely a creature of statute" and must be strictly construed. *Templemire v. W & M Welding, Inc.*, 433 S.W.3d 371, 381 (Mo. banc 2014); section 287.800.1. The Commission's decision must be "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, sec. 18. "On appeal, the Commission's factual findings shall be conclusive and binding in the absence of fraud, and no additional evidence

8

shall be heard." *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 565 (Mo. banc 2022); section 287.495.1.

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the [C]ommission acted without or in excess of its powers;
> (2) That the award was procured by fraud;
> (3) That the facts found by the [C]ommission do not support the award;
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1(1)–(4). This Court reviews "questions of law *de novo* but defer[s] to the Commission on issues of fact." *Lewis*, 661 S.W.3d at 11. This Court also defers to the Commission's credibility determinations and weight given to conflicting evidence. *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020).

**Discussion**

*Points I & II: Compensable Injury and 50-Week Threshold*
*Party Positions*

Because Claimant's first two points are interrelated, they will be addressed together. Claimant's first point states, "The Commission erred in holding that [Claimant's] prior left [sic] knee disability that occurred in Iowa in 1993 was not the direct result of prior compensable injury 'as defined in §287.020[.]'" Claimant argues the Commission erred in finding his Iowa right knee disability was not the direct result of a prior compensable injury as defined in section 287.020. Claimant argues his uncontroverted testimony demonstrated he injured his right knee in the course of his employment with his Iowa employer, and the statute contemplates consideration of out-of-state injuries. The Fund argues the Commission properly found Claimant's right knee disability did not qualify as a compensable injury under the statute because (1) recovery is limited to preexisting injuries which occur in Missouri and (2) are compensable under Missouri's workers'

compensation law. The Fund further argues even if out-of-state injuries could be considered, Claimant did not prove his injury was a compensable injury as defined under Missouri law.

*Fund Liability for PTD Benefits*

"[E]mployees must meet two conditions to make a compensable PTD claim against the Fund." *Klecka*, 644 S.W.3d at 566; section 287.220.3. "First, the employee must have at least one qualifying preexisting disability, which must be medically documented, equal at least 50 weeks of PPD, and meet one of four criteria listed in section 287.220.3(2)(a)a(i)–(iv)." *Id*. "Second, the employee must show he 'thereafter sustains a subsequent compensable work-related injury [often referred to as the primary injury] that, when combined with the preexisting disability[,] … results in [PTD] as defined in this chapter." *Id*.; section 287.220.3(2)(a)b. "[A]n employee satisfies the second condition by showing the primary injury results in PTD when combined with ***all*** preexisting disabilities ***that qualify*** under one of the four eligibility criteria listed in the first condition." *Treasurer of State v. Parker*, 622 S.W.3d 178, 182 (Mo. banc 2021) (emphasis in original). "Non-qualifying preexisting disabilities cannot be considered in determining whether a claimant satisfies the second condition of section 287.220.3." *Klecka*, 644 S.W.3d at 567.

*Compensable Injury*

To meet the first condition, Claimant argues he demonstrated his right knee injury in Iowa was a qualifying preexisting disability because it was "[a] direct result of a compensable injury as defined in section 287.020" as required by section 287.220.3(2)(a)a(ii). "Injury" is defined as "an injury which has arisen out of and in the course of employment. An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3(1).[3] "Accident" is defined as "an unexpected

---

[3] This Court's analysis is confined to what a claimant must prove to demonstrate a compensable injury resulting from a workplace accident rather than occupational disease.

traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." Section 287.020.2. "An injury is not compensable because work was a triggering or precipitating factor." *Id*.

The Commission first determined Claimant's right knee injury in Iowa did not qualify as a compensable injury under section 287.220.3(2)(a)a(ii) because Claimant did not allege: (1) Iowa Power & Light was an employer covered by Missouri's workers' compensation law; (2) his Iowa accident was covered by Missouri's workers' compensation law; or (3) his Iowa injury was compensable under Iowa's workers' compensation law. This Court finds the Commission's reading of section 287.220.3(2)(a)a(ii) impermissibly grafts requirements into the definition of "compensable injury" not expressly stated by section 287.020.3(1). When strictly construing these provisions as required under section 287.800.1, this Court finds neither section 287.020.3(1) nor section 287.220.3(2)(a)a(ii) limit the definition of "compensable injury" as the Commission suggests. Neither provision contains any language confining "compensable injury" to include only those injuries which occur in Missouri, only those employers covered by Missouri's workers' compensation law, or only those injuries which are demonstrably proven under another state's workers' compensation scheme. Sections 287.020.3(1) and 287.220.3(2)(a)a(ii) simply require a claimant to demonstrate "an accident" resulting in an "injury which has arisen out of and in the course of employment" and that was "the prevailing factor in causing both the resulting medical condition and disability." This Court rejects the Commission's construction to the extent it read additional requirements into these statutory provisions to deny Claimant relief on this ground. Section 287.800.1; *see also Surgery Ctr. Partners, LLC v. Modelez Int'l, Inc.*, (Mo. App. E.D.

11

2022) (explaining words may not be added to a statute when applying strict construction to workers' compensation provisions).

The Commission alternatively found—assuming section 287.220.3(2)(a)a(ii) included consideration of an out-of-state accident as a statutorily-defined compensable injury—Claimant did not present credible and persuasive evidence proving his right knee injury was a statutorily-defined compensable injury. Claimant disagrees, citing his uncontroverted hearing testimony:

Q. You've sustained various injuries to yourself during the course and scope of your various employments; have you not?

A. Yes, I have.

Q. The first such injury I show is a right knee injury that occurred during the course and scope of your employment; is that correct?

A. Correct.

Q. Can you tell the Court how that occurred?

A. What, what year?

Q. The 1993 right knee injury.

A. The right knee injury happened at Iowa Power & Light in Des Moines, Iowa, slipped on ice.

Q. Okay. And did you report the injury?

A. Yes, I did.

Q. And did you receive medical treatment for the injury?

A. I did.

Q. And you ended up having surgery on that knee; is that correct?

A. Later on down the road, yes, yes.

Q. Okay. And your employer and insurer paid you when you were off of work; is that correct?

A. Correct.

Q. And they paid for your medical?

A. Yes.

Claimant admitted he did not pursue a workers' compensation claim or "tr[y] to do a settlement" for his right knee injury in Iowa. Dr. D.V.'s report stated, "[Claimant] advises … although [the right knee injury] was not reported as a work injury he feels it was work related he just never reported it as he felt this would jeopardize his employment."

As stated previously, to qualify as a preexisting disability, sections 287.020.3(1) and 287.220.3(2)(a)a(ii) require a claimant to demonstrate "an accident" resulting in an "injury which has arisen out of and in the course of employment," and that was "the prevailing factor in causing both the resulting medical condition and disability." "An injury will not be deemed to arise out of employment if it merely happened to occur while working but work was not a prevailing factor and the risk involved ... is one to which the worker would have been exposed equally in normal non-employment life." *Boothe v. DISH Network, Inc.*, 637 S.W.3d 45, 48 (Mo. banc 2021) (quoting *Miller v. Mo. Hwy. & Transp. Comm'n.*, 287 S.W.3d 671, 674 (Mo. banc 2009)); *see also* Section 287.020.3(2)(a)–(b). "More generally, a causal connection between an injury and a work activity other than mere occurrence at work must be shown." *Id*. Claimant bears the burden of proving these issues. *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 510 (Mo. banc 2012). Failure to meet these standards is fatal to a workers' compensation claim. *Annayeva*, 597 S.W.3d at 199.

This Court holds Claimant failed to meet his burden of proving his right knee injury in Iowa arose out of his employment for two reasons. First, Claimant did not provide prevailing factor evidence about his right knee injury as required under section 287.020.3(2)(a). "The

determination of whether an accident is the 'prevailing factor' causing a claimant's condition is an inherently factual one." *Malam v. State, Dep't of Corr.*, 492 S.W.3d 926, 928 (Mo. banc 2016). "A 'prevailing factor' is 'the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.'" *Id.* (quoting section 287.020.3(1)). Ascertaining whether a claimant's workplace accident caused him or her to suffer the resulting medical condition and disability "must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause." *Id*. (quoting *Gordon v. City of Ellisville*, 268 S.W.3d 454, 461 (Mo. App. E.D. 2008)).

The record reflects Dr. D.V. offered no testimony nor did his reports contain any opinion that slipping on ice in Iowa was the prevailing factor in causing Claimant's right knee injury, medical condition, and disability. Dr. D.V. only discussed prevailing factor regarding Claimant's primary left shoulder injury. Thus, the record is devoid of any prevailing factor medical evidence regarding Claimant's right knee injury.

Second, Claimant did not demonstrate his right knee injury did "not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life" as required under section 287.020.3(2)(b). The record shows Claimant responded to his counsel's leading questions, who made conclusory statements about whether his right knee injury in Iowa was work-related. Claimant testified, "The right knee injury happened at Iowa Power & Light in Des Moines, Iowa, slipped on ice." He did not elaborate on what work activity, if any, he was performing when he slipped on ice nor did he provide treatment records for his right knee injury which could have corroborated his claim the injury was work-related. Hence, Claimant offered no evidence demonstrating a causal connection between his right knee injury and any work activity other than

14

the injury occurred at Iowa Power & Light, which is insufficient. *Boothe*, 637 S.W.3d at 48. Without more, Claimant merely testifying to slipping on ice on his employer's premises is a risk "to which [he] would have been exposed equally in normal non-employment life." *Id.*

Claimant's argument also presumes the Commission believed his testimony his right knee injury was work-related. The Commission "is free to believe some, all or none of any witness's testimony." *March v. Treasurer of Mo.*, 649 S.W.3d 293, 301 (Mo. banc 2022) (quoting *Dierks v. Kraft Foods*, 471 S.W.3d 726, 737 (Mo. App. W.D. 2015)). This Court must defer to the Commission's credibility determinations. *Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 582 (Mo. banc 2023). The Commission found "the record was devoid of evidence required to establish a causal connection between [Claimant's] right knee injury and his work activity" contrary to Claimant's agreement with his counsel's question asking if he sustained "a right knee injury that occurred during the course and scope of [his] employment." Thus, the Commission could have disbelieved Claimant's conclusory testimony his right knee injury in Iowa was work-related.

This Court holds the Commission did not err in finding Claimant failed to meet his burden of proving his right knee injury in Iowa was a preexisting injury as a direct result of a "compensable injury" as defined in section 287.020. Point I is denied.

*50-Week Threshold*

Claimant's second point states, "The Labor and Industrial Commission erred in denying [PTD] benefits for [Claimant] based upon their [sic] finding that the prior knee injuries and disabilities did not reach the 50 week threshholds [sic] under §287.220.3(2)(a)a." Claimant argues the Commission erred in denying PTD benefits based upon a finding his prior knee disabilities did not reach the 50-week threshold under section 287.220.3(2)(a)a. Claimant relies on unimpeached medical testimony stating his knees worsened over time, resulting in greater disability than the

settlement recognized. The Fund argues Claimant has no basis to appeal this issue because the Commission made no finding whether his prior knee injuries reached the 50-week threshold. The Fund further argues Claimant is bound by the settlement determination which resulted in less than 50 weeks of disability.

This Court holds it is immaterial whether Claimant's preexisting disabilities met the 50-week threshold to qualify as preexisting disabilities. The Commission stated it did not reach this issue, finding Claimant's experts improperly incorporated his non-qualifying preexisting right knee disability into their opinions about the Fund's liability for PTD benefits.[4] *See Klecka*, 644 S.W.3d at 567. Dr. D.V. opined he would find Claimant was permanently and totally disabled due to the primary left shoulder injury "in combination with his preexisting medical conditions," which included both knees. D.G. opined Claimant was permanently and totally disabled as a result of his primary left shoulder injury "in combination with his preexisting disabilities." Even Employer's vocational expert, J.B., opined Claimant was permanently and totally disabled "given the combination of issues" from his primary left shoulder injury and his preexisting conditions. Because non-qualifying preexisting disabilities cannot be considered in determining whether Claimant satisfied section 287.220.3(2)(a)a(ii) under *Klecka*, the Commission did not err in finding Claimant failed to make a compensable PTD benefits claim against the Fund. Point II is denied.

---

[4] The Commission stated it found this issue was "dispositive" and did not reach the Fund's remaining six arguments, including the second issue which challenged whether Claimant's preexisting right and left knee disabilities met the 50-week threshold. This Court recognizes the Commission specifically reversed the ALJ's finding: "These disabilities qualify under that statute as they arise from work injuries and are more than 50 weeks." Yet, the Commission offered no analysis whatsoever about the 50-week threshold issue. We are somewhat confused by these conflicting statements and presume, given what the Commission found dispositive, any comment on the 50-week threshold was superfluous.

Claimant's third point states, "The Commission erred in denying [Claimant PTD] benefits leaving [Claimant] without a remedy." Claimant maintains the Commission implicitly found he was entitled to PTD benefits, and if the Fund is not liable, then failing to hold Employer liable leaves him "without a remedy." Employer argues Point III should be dismissed for Rule 84.04 violations, and the Commission correctly found it liable for only PPD benefits. Employer further argues Claimant did not raise the possibility it was liable for PTD benefits if he did not prevail on his Fund claim for PTD benefits at the Commission.[5]

*Discussion*

Claimant now argues if the Fund escapes liability for PTD benefits, Employer is liable for those benefits under *Federal Mutual Company v. Carpenter*, 371 S.W.2d 955 (Mo. 1963), which stated:

> The purpose of … [F]und legislation is to encourage the employment of the partially handicapped but it does not follow as a matter of course from the mere enactment of the legislation that the employer of the partially disabled is relieved of all obligations under the compensation law to an employee who in the course of his last employment becomes totally and permanently disabled. As stated, in the absence of an apportionment statute or … [F]und legislation, the employer is liable for the entire disability resulting from a compensable injury and this of course may include lifelong medical payments.

*Id*. at 957 (internal citations omitted). Claimant contends the uncontroverted evidence demonstrated he was permanently and totally disabled due to his primary injury alone. Because the Commission found the Fund was not liable for PTD benefits, Claimant asserts Employer is liable under *Federal Mutual*; otherwise, he is left without a remedy. Claimant supports his argument with section 287.220.3(3) which states: "When an employee is entitled to compensation

---

[5] The Fund did not address this point in its respondent's brief.

as provided in this section, the employer at the time of the last work-related injury shall only be liable for the disability from the subsequent work-related injury consider alone and of itself." Claimant asserts when the employee is not entitled to compensation from the Fund under this section, the employer is responsible for the disability from the primary injury in combination with the prior disabilities because the restriction to consider that disability alone is removed.

Before addressing this claim, this Court must resolve whether Claimant's argument is preserved for review beyond his defective point relied on. The legal issue Claimant attempts to raise in Point III was not raised and litigated in front of the ALJ. Furthermore, "[a]n issue appropriate for, but not addressed with the [C]ommission, cannot be litigated on appeal." *Kent v. NHC Healthcare*, 621 S.W.3d 596, 614 (Mo. App. E.D. 2021) (quoting *St. John's Mercy Health Sys. v. Div. of Emp. Sec.*, 273 S.W.3d 510, 516 (Mo. banc 2009)). In *Kent*, this Court declined to address two of the claimant's points on appeal because the arguments were not raised before the Commission. While this Court found it was "understandable" the claimant did not pursue these issues before the Commission because he received a favorable award from the ALJ, we held the claimant "could have challenged the alleged erroneous rulings to sustain the final award in his favor even in the absence of a cross appeal." *Id*. *Kent* concluded, "[u]ltimately, 'there can be no excuse for failure to … preserve [basic issues] prior to appeal in the court of appeals.'" *Id*. (quoting *St. John's Mercy Health Sys.*, 273 S.W.3d at 516).

As in *Kent*, the record reflects Claimant did not preserve for review his specific legal argument Employer is liable for PTD benefits if the Fund is not under *Federal Mutual* and section 287.220.3(3) because it was not raised with the Commission. The Fund's application for review stated, "[t]he ALJ erred in awarding [PTD] benefits from the Fund because vocational evidence shows that the psychiatric restrictions from the primary injury alone are sufficient to

18

render Claimant unemployable." Employer's answer stated the Fund mischaracterized the vocational evidence to support this argument. This was a specific, factual argument distinct from the legal argument Claimant now raises. Claimant did not file his own application for review, answer the Fund's application, or join in Employer's answer. The Commission did not have before it the legal question of whether Claimant would be left without a remedy if he were found to be permanently and totally disabled in the absence of Fund liability.[6] Because Claimant's specific legal argument was not raised before the Commission, this Court declines to review Point III. *Kent*, 621 S.W.3d at 614. Point III is denied.

### Conclusion

The Commission's decision is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.

---

[6] Claimant contends he raised this issue in his notice of appeal, which he argues was sufficient to preserve this argument for appeal. Claimant cites no legal authority to support the proposition a claimant may raise an issue for the first time in a notice of appeal or it is appropriate for this Court to convict the Commission of an error it had no opportunity to address. Regrettably, the question Claimant attempts to present is one we cannot entertain on this record.